**Norman L. HORN, Plaintiff,**

v.

**Julius MULLINS, Trustee, et al., United Mine Workers of America Health and Retirement Funds, Defendants.**

**Civ. A. No. 80–0118–A.**

United States District Court,
W. D. Virginia,
Abingdon Division.

Sept. 22, 1980.

Matthew J. Cody, Jr., Lebanon, Va., for plaintiff.

Stuart B. Campbell, Jr., Campbell, Young & Hodges, Wytheville, Va., Phillips T. Kimball, Jr., UMWA Health & Retirement Funds, Washington, D. C., for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

Plaintiff, Norman L. Horn, brings this action against the Trustees of the United Mine Workers of America Health and Retirement Funds, seeking to establish entitlement to a pension under the United Mine Workers of America 1974 Pension Plan created pursuant to Article XX of the National Bituminous Coal Wage Agreement of 1974. Jurisdiction derives from § 301(a) of the Labor–Management Relations Act, 29 U.S.C. § 185(a),[1] and § 502(f) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(f).[2] *Gordon v. ILWU–PMA Benefit Funds*, 616 F.2d 433 (9th Cir. 1980).

On October 18, 1976, plaintiff, an employee with at least ten years of signatory service, injured his back lifting a bag of cement while working in a classified job for the Island Creek Coal Company, a signatory to the National Bituminous Coal Wage Agreement. Because of his injury plaintiff received workman's compensation benefits from October 27, 1976, until January of 1979, when a lump–sum settlement was made. On September 15, 1978, he was awarded social security disability benefits with an onset date of October 20, 1976. On September 25, 1978, he applied to the United Mine Workers of America 1974 Pension Trust for a disability pension. His application was denied initially by letter dated September 10, 1979. He then requested a hearing to review the denial, and the hearing was held before a Trust Fund Hearing Officer in Allen, Kentucky, on January 18, 1980. In a decision rendered by the Hearing Officer on January 18, 1980, plaintiff's claim was denied, purportedly because he

---

1. Title 29 U.S.C. § 185(a) provides:

   Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

2. Title 29 U.S.C. § 1132 provides in pertinent part that a civil action may be brought by a participant or beneficiary of a pension plan "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," and United States District Courts are granted jurisdiction "without respect to the amount in controversy or the citizenship of the parties ...."

failed to establish "a substantial causal link between the mine injury of October 18, 1976, and total disability." Plaintiff, in turn, commenced this action to establish his entitlement to pension benefits.

In accordance with its terms, the Plan became effective December 6, 1974,[3] and provides pension benefits in the case of disability retirement if the applicant satisfies the following eligibility requirements:

A participant who (a) has at least 10 years of signatory service prior to retirement, and (b) becomes totally disabled on or after the effective date as a result of a mine accident shall, upon his retirement (hereinafter "Disability Retirement"), be eligible for a pension. A participant shall be considered to be totally disabled only if by reason of such accident he is subsequently determined to be eligible for social security disability insurance benefits under Title II of the Social Security Act or its successor.

1974 Pension Plan, Article II, C. Whether these requirements are met in a particular case is to be decided by the trustees, as the Plan provides that the trustees "have full and final determination as to all issues concerning eligibility for benefits." 1974 Pension Plan, Article VIII, A. Furthermore, the trustees are authorized to promulgate binding "rules and regulations to implement [the] Plan ...." Plan, Article VIII, B, 1.

It appears from the medical evidence that plaintiff injured his back while lifting a bag of cement in the course of his work on October 18, 1976. He visited his family physician two days later and was sent to Dr. Kerry W. McCluney for x–rays on the same day. From the x–rays it was Dr. McCluney's impression that plaintiff was suffering from "long–standing sacroilitis at the left sacroiliac joint." On October 27, 1976, plaintiff was admitted to the hospital by Dr. Tolosa based on an impression of "slipped disc and low back syndrome." Plaintiff was placed in pelvic traction and

was discharged on November 2, 1976, with diagnosis of low back syndrome and urinary tract infection. Due to continued pain, however, plaintiff was referred by Dr. Tolosa to Dr. Edward M. Litz. On Dr. Litz' instance, plaintiff was admitted to the hospital on December 27, 1976, and a myelogram was performed. Plaintiff was discharged on January 6, 1977, with a diagnosis of a herniated disc of traumatic origin. Plaintiff was readmitted to the hospital on January 18, 1977, and a "bilateral lumbar laminectomy and excision of L4–5 disc" was performed by Dr. Adrian Silk.

On September 13, 1977, Dr. Silk advised the Old Republic Insurance Company, the Workman's Compensation insurance carrier, as follows: "... I feel this patient has a chronic low back pain syndrome, but I feel [he] is not disabled and he should be engaged in some kind of activity. I feel that lifting and heavy labor work is not indicated." In numerous subsequent reports, however, Dr. Silk advised that it was his opinion that claimant is totally disabled as a result of the mine accident. In his last report dated November 13, 1979, Dr. Silk advised that he felt plaintiff's "severe pain on the back and pain on the lower extremities due to the mine accident will prevent him from engaging in any productive activity."

Apparently, as a result of Dr. Silk's September 13, 1977 report, the insurance carrier requested that plaintiff be examined by Dr. James G. McFaddin. In reporting his findings, on November 7, 1977, Dr. McFaddin stated as follows:

Objectively, Mr. Horn appears to have made an excellent recovery from his disc disease, his injury and his surgery. He shows mildly restricted lumbar motion at this time. The general appearance of the low back otherwise is quite normal. He has excellent muscle tone, he has relatively normal function of the lower extremities without wasting or disease. His reflexes are intact. There is a mild sensory

---

**3.** However, "[e]xcept in a case of total disability resulting from mine accidents occurring after the effective date [the] Plan does not provide benefits to persons retiring on or before December 31, 1975 ...." 1974 Pension Plan, Art. I.

deficit in the right lower extremity. Findings such as this man presents are compatible with moderate work, but generally the prognosis for returning these individuals to manual labor is quite poor.

Claimant was examined by a psychiatrist, Dr. David M. Wayne, on April 13, 1978. From this examination, Dr. Wayne diagnosed a chronic moderate anxiety neurosis associated with his physical difficulties and in his opinion it was doubtful whether plaintiff "would respond to out–patient psychotherapy treatment or be a good candidate for vocational rehabilitation services." He further stated that he would not be surprised if plaintiff's "symptoms were to become progressively worse as time goes by." Other medical records reflect findings of anxiety tension, chronic bronchitis, probable chronic maxillary sinusitis, eczema of the right hand, and mild pneumoconiosis.

As previously stated, plaintiff's claim was denied because plaintiff failed to establish "a substantial causal link between the mine injury of October 18, 1976, and total disability." More particularly, the Hearing Officer found:

> Appellant has not established a substantial causal link between the mine injury of October 18, 1976, and total disability. Insufficient evidence has been submitted to clearly establish that physical and non–physical impairments that rendered appellant totally disabled were the result of the October 18, 1976 mine injury.

Plaintiff is, otherwise, eligible for a pension in that he has at least ten years of signatory service prior to retirement, he became totally disabled after the effective date of the Plan, and, he has been determined eligible for social security disability insurance benefits under Title II of the Social Security Act. Consequently, the only questions before the court pertain to whether plaintiff established a substantial causal link between his back injury and his disability. In determining that question, the court may not substitute its judgment for that of the trustees, and may reverse the decision only if it is found that the decision was arbitrary, capricious or made in bad faith, not supported by substantial evidence, or erroneous on a question of law. *Rehmar v. Smith*, 555 F.2d 1362 (9th Cir. 1976); *Danti v. Lewis*, 312 F.2d 345 (D.C.Cir. 1962). *See generally Gordon v. ILWU–PMA Benefit Funds*, 616 F.2d 433 (9th Cir. 1980); *Aitken v. IP & GCU–Employer Retirement Fund*, 604 F.2d 1261 (9th Cir. 1979).

■ Before addressing the question of whether substantial evidence supports the conclusion that there is not a substantial causal link between plaintiff's back injury and his total disability, it must be understood that the determination of whether an individual is disabled necessarily involves vocational as well as medical considerations. A back injury which precludes an individual from performing his usual job would rarely prevent performance of light and sedentary activities. However, whether an individual with such an injury could meet the vocational demands of light or sedentary employment is an obviously different matter. The test for disability is a functional one, and a requirement that a mine accident injury *alone* preclude alternative work fails to take that fact into account. Given such a requirement, a plaintiff could establish that a mine accident injury is substantially responsible for preventing him from returning to his usual job, but, because other medical conditions or vocational factors preclude alternative work, it could be found that his total disability did not result from a mine accident. The only reasonable interpretation of the requirement that total disability be "the result of a mine accident," therefore, is that it requires total disability to have been proximately caused by the mine accident. That is, if the plaintiff was injured in a mine accident and that injury, whether in combination with a previous or subsequent condition, is substantially responsible for plaintiff's inability to perform his job and for whatever medical and vocational reasons he is unable to perform an alternative job, then his total disability results from a mine accident.

■ Looking to the facts of the present case, the court finds that the Hearing Officer's decision is not supported by substan-

tial evidence. It is clear from the medical evidence that plaintiff is unable to return to his coal mining employment due, in substantial part, to his back injury. Even Dr. Silk's September 13, 1977 report which is the most favorable to the trustees of Dr. Silk's reports, stated, in essence, that plaintiff's back injury precludes lifting and heavy manual labor. While Dr. Silk further stated in that report that plaintiff "is not disabled and he should be engaged in some kind of activity . . . ," this was simply Dr. Silk's opinion regarding plaintiff's physical capability to perform lighter forms of activity. The opinion was not rendered and cannot be accepted as evidence that alternative jobs exist which are within plaintiff's vocational capabilities. Furthermore, it appears that with the passage of time and from additional evaluations Dr. Silk eventually concluded that plaintiff was physically incapable of engaging in any kind of work. Similar to Dr. Silk's September 13, 1977 report, Dr. McFaddin's November 7, 1977 report indicated that plaintiff's back condition, while not precluding moderate work, made the prognosis for returning to manual labor "quite poor." Like Dr. Silk's report, however, Dr. McFaddin's report was not rendered and cannot be accepted as evidence that alternative jobs exist which are within plaintiff's vocational capabilities. Consequently, both reports, which are the most favorable that can be offered in support of the trustees' position, demonstrate that plaintiff's back injury precludes him from returning to his usual job, and there is no evidence of his vocational ability to perform other jobs which are within his physical capabilities.

From the uncontradicted evidence that plaintiff's back injury precludes him from returning to his usual job the court will presume, in the absence of evidence to the contrary, that he is totally disabled as a result of a mine accident. The United Mine Workers of America 1974 Pension Plan was created pursuant to Article XX of the National Bituminous Coal Wage Agreement of 1974 and derives validity by virtue of § 302(c)(5)(B) of the Labor Management Relations Act of 1947, Title 29 U.S.C. § 186(c)(5)(B). "Interpreting a pension plan agreement permitted under 29 U.S.C. § 186, and determining whether a breach of that agreement has occurred is a matter controlled by federal law." *Aitken v. IP & GCU—Employer Retirement Fund, supra,* at 1264. While the interpretation of such a plan is a matter of federal law, generally speaking, the court is not at liberty to create a federal common law governing pension plan management, *see Lugo v. Employee Retirement Fund of Illumination Products Industry,* 529 F.2d 251, 255 (2d Cir. 1976), except in certain narrowly circumscribed areas. *See generally Thurber v. Western Conference of Teamsters Pension Plan,* 542 F.2d 1106, 1108 (9th Cir. 1976). Nevertheless, the court is persuaded that the implementation of a substantial evidence review standard necessitates the application of certain presumptions in resolving disability related questions. In particular, when a miner establishes that he is unable to return to his coal mining employment due in substantial part to an injury received in the mines, then it is reasonable to presume that his injury has disabled him from other employment, and in the absence of substantial evidence indicating ability to perform alternative work he should prevail on the issue. That is, it would not be reasonable to require the plaintiff to negate the possibility that he could perform other work despite his injury in the absence of substantial evidence that he could. Without the aid of such a presumption, nothing would remain of substantial evidence review as it is impracticable if not impossible to prove the negative–that there are not other jobs that the miner could perform. Accordingly, finding that plaintiff established that he is unable to return to his coal mining employment due in substantial part to his back injury, and finding there to be an absence of substantial evidence indicating his ability to perform alternative work, plaintiff is found to be totally disabled as a result of a mine accident. Having otherwise met the requirements for pension eligibility, summary judgment will be entered in his behalf.

Summary judgment for plaintiff.