943 F.2d 457
 James W. CHICARELLI, Plaintiff-Appellant,
v.
UMWA HEALTH AND RETIREMENT FUNDS; Joseph P. Conners, Sr.;
Paul R. Dean; William B. Jordan; William Miller;
Donald E. Pierce, Jr., Trustees,
Defendants-Appellees.
 No. 91-3005.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 7, 1991.
Decided Aug. 22, 1991.
As Amended Sept. 12, 1991.
 
 Susan Kipp McLaughlin, McLaughlin & Curry, Fairmont, W.Va., for plaintiff-appellant.
 Andrew Marie St. Martin, Associate General Counsel, U.M.W.A. Health & Retirement Funds, Washington, D.C., argued (Janet A. Penz, Sr. Associate Counsel, on brief), for defendants-appellees.
 Before MURNAGHAN and NIEMEYER, Circuit Judges, and YOUNG, Senior U.S. District Judge for the District of Maryland, sitting by designation.
 OPINION
 MURNAGHAN, Circuit Judge:
 
 
 1
 Here we have an appeal from the decision of the United States District Court for the Northern District of West Virginia rendered December 3, 1990, granting the United Mine Workers of America Health & Retirement Fund's (the Fund's) motion for summary judgment and denying James Chicarelli's motion for summary judgment in a case brought by Chicarelli as a mine worker claiming disability entitling him to a pension from the United Mine Workers of America 1974 Pension Plan of which the Fund was Trustee.
 
 
 2
 The controlling language of the pension plan, a product of negotiation between employers and the UMWA, states:
 
 
 3
 A Participant who ... becomes totally disabled as a result of a mine accident ... shall ... be eligible for a pension while so disabled. A Participant shall be considered to be totally disabled only if by reason of such accident such Participant is subsequently determined to be eligible for Social Security Disability Insurance Benefits under Title II of the Social Security Act or its successor.
 
 
 4
 A case resembling in a number of particulars Chicarelli's case is Boyd v. Trustees of United Mine Workers Health and Retirement Fund, 873 F.2d 57 (4th Cir.1989). In that case, the applicant for Social Security Disability Insurance (SSDI) benefits was granted an award for reasons of severe mental impairment. She had, in addition, been hospitalized for neck, right shoulder, and arm pain. The pain was traceable to a cervical spine sprain when a timber fell on her shoulder in a mine. The court in Boyd first considered whether her cognitive dysfunction (organic brain syndrome) in and of itself was sufficiently caused by the mine accident to meet total disability for purposes of the pension plan. That direct or single approach method of claiming mine accident total disability was abandoned on appeal by Boyd, and that abandonment was determined to be supported by substantial evidence and a determination to that effect lay within the Fund's discretion.[1]
 
 
 5
 But that did not end the matter. There remained the question of whether there was a combination of mine accident with severe mental impairment to bring about total disability. In Chicarelli's rather similar case, he sought SSDI, citing both heart disease associated with diabetes and orthopedic mine accident injury. The Social Security Administration (SSA) awarded SSDI for heart disease and diabetes but concluded as to mine accident causation:
 
 
 6
 The medical evidence shows that you have a history of diabetes.... While your past back injury may cause you some discomfort, it does not seriously affect your ability to stand, bend, sit and engage in normal daily activities.
 
 
 7
 Specialized heart studies show you do have some heart damage. However, you did not complain of chest pain until ... July 16, 1986. Therefore, we have concluded that your disability began on July 16, 1986. This date is the earliest we can find that your condition prevented you from working.
 
 
 8
 That SSA determination, coupled with the fact that always following injury from a mine accident Chicarelli resumed working in the mines until heart disease and diabetes felled him, effectively prevented a decision that the Fund has abused its discretion in denying an award to Chicarelli on the basis that mine accident alone, i.e., uncombined with heart disease or diabetes, had not been the cause of Chicarelli's total disability.
 
 
 9
 In Boyd's case, there had been the additional question of whether the combined effect of mining accident and disabling psychological effects was sufficiently established to require the Fund to consider whether the mine accident, as an exacerbating cause for the psychological effects, made it the proximate cause for the mine accident for pension plan purposes. Accordingly, we must investigate the record to determine whether there was substantial evidence of Chicarelli's SSDI award for heart and diabetes reasons having been combined in an exacerbating way with mine accident.[2]
 
 
 10
 Chicarelli, while suffering several mine accidents, continued in each case to recover sufficiently to continue work in the mines. When he stopped working, it was on the basis of vision impairment, part of the heart disease and diabetes afflictions from which Chicarelli was suffering. While he introduced substantial evidence indicating the substantiality of mine accidents, attributing his continuing nevertheless to work to financial necessity, the Social Security Administration (SSA) issued the foregoing explanation of determination.
 
 
 11
 That SSA determination not only showed that total disability was not the result of a mine accident alone, but further that the mine accident was not substantially responsible for Chicarelli's inability to perform his job. There is evidence throughout the record of the long-time existence of diabetes, as well as evidence of several mine accidents. However, the controlling consideration here is that there was no real evidence of interconnection to support a finding of combination necessary to establish "substantial responsibility" on the part of mine accident in establishing total disability.
 
 
 12
 A review of the case as presented to the Fund shows that on March 30, 1980, Chicarelli was struck at work in the back of his head and upper back by a hundred pound piece of slate causing him pain in the upper and lower back. Diagnosed as suffering from a neck contusion, he returned, however, to work on April 4, 1980, and worked until August 12, 1980, when he was injured again when he lifted a heavy "curtain" and pulled something in his lower back. He was unable to return to mine work until October 26, 1981.[3] As early as January 27, 1981, Dr. Robert S. Wilson, an orthopedic surgeon examining in connection with Chicarelli's Worker's Compensation claim, reported:
 
 
 13
 This claimant has a complex problem. He has anemia. He has diabetes. He has had an injury, and he had definite evidence of neuropathy in the right lower extremity. We must assume that the injury has produced the neuropathy due to nerve root pressure in an individual who has the above problems.... He may always have weakness in the right foot and ankle.... He does relate to me that he did have an automobile accident in 1975 and this probably explains why his back was x-rayed at that time. He states his back did not bother him to any great degree until he was injured on 3/30/80.
 
 
 14
 Dr. Wilson recommended a protective brace to facilitate work in the coal mines.
 
 
 15
 On June 16, 1981, Dr. P. Kent Thrush, Chicarelli's treating physician, stated, "It is my feeling that this patient is totally disabled from heavy labor and any activity that would involve repetitive lifting or bending.[4]
 
 
 16
 On September 20, 1982, the medical record disclosed Chicarelli's long term history of diabetes. In any event, Chicarelli, on October 26, 1981, had returned to work in the mines and suffered subsequent injuries to his right arm and elbow in 1983, and later he, in 1984, fractured his right ankle. In 1985, he injured his right arm in a fall.[5]
 
 
 17
 In May, 1985, his diabetes problem sent Chicarelli to the hospital, resulting, inter alia, in a diagnosis of adult onset diabetes mellitus and coronary artery disease. Evaluation of his coronary artery disease was recommended but Chicarelli refused. In November, 1985, though still working in the mines, Chicarelli was being seen by Thrush, his treating physician, for back problems, who ordered a CT scan of Chicarelli's lumbar spine. The hospital reported the following findings:
 
 
 18
 There is generalized bulging of the L3-4 annulus with moderate impingement upon the thecal sac anteriorly. In addition, there is a marked, focal bulge of disc material on the left which completely fills the left neural foramen and significantly impinges upon the left L3 nerve root. There is also hypertrophy of the ligamenta flava which results in a significant central spinal stenosis as well. The bony spinal canal is narrowed at L4-5 and there is marked hypertrophy of the ligamenta flava and posterior bulging of the annulus resulting in a severe central spinal stenosis at this level as well. There is encroachment upon the neural foramina bilaterally by hypertrophic changes of the posterior facets. At L5-S1 there is no evidence of HNP but there is moderate hypertrophic change of the posterior facets which narrows the lateral recesses somewhat. No evidence of nerve root impingement is seen, however.
 
 
 19
 IMPRESSION: Significant central spinal stenosis at L3-4 and L4-5. This appears to be a combination of both soft tissue and bony factors. In addition, there is a large lateral HNP on the left at L3-4.
 
 
 20
 On November 20, 1985, Thrush reported of Chicarelli:
 
 
 21
 There also appears to be a large disc herniation on the left side of the L-3 4. He has numbness in both legs but in general the symptoms seem to be worse on the right side. This patient has continued to work despite multiple problems. It includes severe diabetes.
 
 
 22
 Thrush's report, in handwriting in a note in the record margin, read: "This claimant is a walking time bomb and his back is a disaster T." The record refers not at all to any connection with, and certainly no aggravation of the diabetes by, mine accident.
 
 
 23
 In January, 1986, Chicarelli began having significant problems with his eyesight which are not described as in combination with or caused by his orthopedic problems, and he did not, from January 9, 1986 on, return to work. His entry into the hospital was for proliferative diabetic retinopathy. Chicarelli, feeling himself to be disabled, applied for Social Security Disability Insurance benefits. Only for a total disability due to a mine accident could Chicarelli, in addition, seek to qualify for a pension plan benefit.
 
 
 24
 Chicarelli could, of course, insure SSA consideration of his claim on the more remunerative mine accident basis by restricting his disability claim to causation by a mine accident. Understandably, however, he relied on heart disease and diabetes also. It might, as in fact it did, turn out that a claim based on mine accident alone would fail. But if he had thought there was an exacerbating condition of mine accident to show along with the heart disease and diabetes, it is difficult to understand why he made no such combination claim. A Social Security supervisor's June 6, 1986 review noted: "This case is complicated but it has a lot of potential for a[n] ... allowance.... He has a bad back with spinal stenosis."
 
 
 25
 Chicarelli was sent by the Social Security Administration to Dr. James R. Dollison for an evaluation of his disability application. Dollison reported, following an examination July 16, 1986, that Chicarelli's chief complaint was, "My eyes went out on me." He referred to a sudden onset in January 1986. Chicarelli told him that he had had diabetes for eighteen or nineteen years. Dollison's extensive report noted a claim of numbness in Chicarelli's legs from the knees down. Reports of heart pain and of a slow gait were made by Dollison as was a right footdrop and a limit in forward bending to 70 degrees. Dollison's comment read:
 
 
 26
 This patient is in an extremely high risk category for recurrent myocardial infarct. In all probability, he should have a stress test in order to evaluate the severity of his angina. I feel that this patient is in a very high risk surgical category and indeed may not be a surgical candidate. His diabetes is certainly uncontrolled. His blood sugar on the occasion of his visit was extremely elevated to 320.... As noted, he has practically all of the complications of protracted and unregulated diabetes, including diabetic retinopathy, advanced cardio-vascular disease, and diabetic neuropathy....
 
 
 27
 The SSA asked Dollison to perform a physical exam, EKG, breathing study and a lab study. No x-ray testing was ordered on Chicarelli's back. There were no indications of a combination or other connection between heart disease and diabetes, on the one hand, and mine accident, on the other. Dollison opined that Chicarelli's neuropathy on the right side was caused by diabetes.
 
 
 28
 The September 13, 1986 SSA disability determination concluded that Chicarelli "said that [he] became disabled on January 8, 1986" on the basis of "eye problems, a hearing loss, a heart attack, diabetes and a back injury." Combination of two disabling factors again was not asserted. On the contrary, the SSA determined:
 
 
 29
 The medical evidence shows that you have a history of diabetes.... While your past back injury may cause you some discomfort, it does not seriously affect your ability to stand, bend, sit and engage in normal daily activities.
 
 
 30
 The SSA set July 16, 1986 as the date Chicarelli's disability was established. The SSA, in awarding SSDI benefits, found chronic ischemic heart disease with angina as its primary diagnosis and diabetic retinopathy as its secondary diagnosis.
 
 
 31
 On October 6, 1986, Thrush provided a letter:
 
 To whom it may concern:
 
 32
 James Chicarelli is a patient who is well know [sic] to this office. He came under our care in August of 1980 with the complaint of severe back pain and right leg pain. He subsequently developed marked weakness of the right dorsiflexors of the ankle and a depressed ankle reflex on the right. He was treated conservatively with rest in the hospital and at home. His back and leg pain improved but he still had marked weakness of dorsiflexion of the right ankle and toes. He is now required to wear a brace on the right leg. After this first incident he was finally able to return to work in October 1981. Mr. Chicarelli also has chronic medical problems in the form of diabetes and thalassemia anemia. We continued to check Mr. Chicarelli periodically for the chronic weakness in his legs. He came under our care again on a regular basis on January 23, 1984 when he suffered a fracture of the right ankle (distal fibula). He returned to his job after this accident on 7/15/84. He came under our care again in July 1985 for an infection of the left olecranon bursae. This required incision and drainage and he was able to return to work on 8/8/85. All of the problems that we treated Mr. Chicarelli for were work related. His back injury was from a lifting episode, the fracture was from a boulder falling on him at work and the elbow injury was from an elbow injury that he sustained in 1983 in the mines.
 
 
 33
 Again, while medical problems of diabetes and anemia are mentioned, there is nothing appearing to connect them in any way with mine accident.
 
 
 34
 The SSA Disability Service on July 1, 1986 had sent a renewed request for medical information to Thrush asking about Chicarelli, as a Social Security applicant for disability. Apparently by July 30, 1986, SSA called off the renewed request, notifying Thrush of receipt of sufficient information from other sources. Thrush, on October 6, 1986, nevertheless provided his aforementioned "to whom it may concern" letter.
 
 
 35
 On October 23, 1986, Chicarelli applied for 1974 pension plan benefits. Orthopedic expert opinions of January 8, 1987 and July 8, 1988 attested to the causal links between mine accident and Chicarelli's disability. Those opinions, however, do not address whether the mine accident was combined with heart disease and diabetes in an exacerbating fashion to cause total disability.
 
 
 36
 On November 23, 1987, and after review on October 28, 1988, April 20, 1989, and August 22, 1989, Chicarelli's request for pension benefits has been denied by the Fund. One conclusion was that Chicarelli's SSDI award "was in no way related to a mine accident." The medical consultant of the Fund repeatedly found that the basis for SSA determination was Chicarelli's "severe diabetes with many complications and severe heart disease." The consultant found "very little evidence on file to indicate that [Chicarelli's] neck, right arm and elbow, and right ankle injuries sustained in the mine accidents ... contributed to ... the [SSA's] finding [Chicarelli] totally disabled." He found no "objective evidence to show that [Chicarelli's SSDI] award was based upon orthopedic disability, including residuals of his injuries in the mines."
 
 
 37
 While some attention was paid to a possibility that the initial SSA determination of heart disease and diabetes may have foreclosed for all time a determination of eligibility for SSDI benefits attributable by reason of a mine accident, it is more likely only an indication of the fact that the SSA was proceeding on the basis that there was no evidence of an exacerbating condition asserted as flowing from the combination of heart disease and diabetes, on the one hand, with mine accident, on the other.[6] The denial to Chicarelli was not based simply on the SSA determination. The medical consultant of the Fund in October 1988 investigating the matter determined that not only had the SSA not found mine accident contributing factors in the award to Chicarelli of SSDI benefits, but the evidence, when considered in toto, did not justify such a finding by it. The consultant pointed, upon reviewing Chicarelli's medical file, to "severe diabetes with many complications and severe heart disease." The consultant also found little evidence connecting mine accident injuries with Chicarelli's total disability. Thereupon there followed an opinion of Chicarelli's physician concluding that the main causes of Chicarelli's disability were orthopedic problems "primarily related" to a mine accident source. Again we confront a "mine accident" alone approach. As for a combination approach, the medical consultant for the Fund concluded that there was lack of evidence to show that the SSDI award to Chicarelli was based, in whole or in part, upon orthopedic disability associated with mine accident.
 
 
 38
 Further evidence was submitted by Chicarelli and accepted for consideration by the Fund. The Fund, however, after review, did not change its mind, relying on the fact that the SSDI benefits awarded Chicarelli did not flow from a mine accident or accidents but rather from heart and diabetes conditions.
 
 
 39
 Then by a June 22, 1989 order of the West Virginia Workers' Compensation Fund, it was ruled "it appearing that the Claimant suffers from pre-existing permanent disabilities attributable to multiple prior injuries, and through the combined effect of these injuries, is now permanently and totally disabled." What those injuries were was not spelled out, making the combination Chicarelli would need to establish difficult to the point of impossibility.
 
 
 40
 The Fund did not change its mind, finding:... [t]he Funds' Pension Disability guidelines specifically state that to qualify for a pension the miner must be involved & subsequently be determined to be eligible for Social Security disability by reason of that accident. In this case, the basis of the applicant's Social Security disability award was in no way related to a mine accident.
 
 
 41
 That was a permissible determination, given Chicarelli's continued working until the disabling diabetes onslaught, the SSA's holding that heart and diabetes was the cause of disability, and the substantial lack of evidence of a basis for finding a mine accident proximate cause because of a link between long-time heart and diabetes problems, on the one hand, and mine accident, on the other. The Fund consequently has not abused its discretion on the combination approach (there having been no substantial evidence produced on that point on behalf of Chicarelli).[7]
 
 Accordingly, the judgment is
 
 42
 AFFIRMED.
 
 NIEMEYER, Circuit Judge, concurring:
 
 43
 Because I believe that we only need to follow the plain meaning of the language of the pension plan to reach the proper result in this case, other grounds for our decision are unnecessary. I concur in the judgment.
 
 
 
 [1]
 That abuse of discretion was the appropriate standard was made clear. Boyd, 873 F.2d at 59
 
 
 [2]
 Chicarelli has not proceeded on the combination approach to establish mine accident causality. His brief commences by labeling mine accident and heart and diabetes as "two independent" causes. His approach has been to try to establish mine accident as the cause of disability alone. He has argued for a determination that "a well documented orthopedic condition causing multiple mining accidents ... could have independently caused him to be totally disabled." In his brief, it is conceded "that his mine accidents did not cause his heart disability and diabetic retinopathy." We shall, nevertheless, in this case involving a claim to a trust benefit, investigate whether the combination aspects were somehow brought to the Fund's attention
 
 
 [3]
 The West Virginia Workers' Fund in 1989 referred to it as a re-injury of the March 30, 1980 injury
 
 
 [4]
 On March 16, 1981, Thrush had remarked on Chicarelli's diagnosis of diabetes and chronic anemia but suggested no exacerbation of them by the mine accidents. Thrush then also recommended, for orthopedic reasons, a short leg brace
 
 
 [5]
 Some time later it was Dr. Michael Schroering's opinion provided to Chicarelli in a July 8, 1988, report that those subsequent injuries were a result of Chicarelli's leg weakness and a reason for his instability leading to frequent falls
 
 
 [6]
 Both parties assert, and we accept, that the Fund, rather than the SSA, was the determiner of the crucial fact. That serves to eliminate complaints that appeals within the SSA may not be available. The SSA's finding on non-disability for mine accident alone does, however, remain a salient bit of evidence
 
 
 [7]
 The combination approach mentioned in Boyd is indeed referred to in Chicarelli's brief: "the Trustees must review the evidence and determine whether or not a mine injury either alone or in combination with either a pre-existing or subsequently existing condition renders the claimant disabled." But there is simply no evidence that the mining accident exacerbated the independent condition of heart and diabetes illness leading to total disability. Chicarelli has insisted that the finding as to mine accident vel non as the cause of disability was for the Fund and not the SSA to make. It clearly was and he should have spent time rather on showing by evidence that, in his case, there was indeed a combination of conditions, including mine accident, which brought about the disability. Chicarelli has assumed that the SSA determination as to the grounds (heart and diabetes) on which it found total disability to be absolutely binding on the Trustees of the Fund and has argued for a departure from the Fund's "mechanical reading" of the 1974 pension plan language in order to avoid absurd results. First of all, to do so would be difficult, if not impossible, under the holding in United Mine Workers of America Health and Retirement Funds v. Robinson, 455 U.S. 562, 573-74, 102 S.Ct. 1226, 1232-33, 71 L.Ed.2d 419 (1982), that in the absence of a violation of federal law "a federal court has no authority to modify the substantive terms of a collectively-bargained contract."
 More basically, it is a failure of proof not absurdity of applicable law which has produced the summary judgment in the favor of the Fund. While Chicarelli's case is a sympathetic one, an essential piece of evidence--the combination or link--has not been provided. The mine accident causation all alone was determined not to be enough. That compels us to consider not Chicarelli alone but all the others who may be entitled to 1974 pension plan disability awards who may be frustrated if such departure from the pension plan's plain meaning is allowed to generate a possibly wholesale breach in the wall guarding trust assets. That might well be the case if anyone granted SSDI benefits for any reason then, on the basis of a mine accident which had not precluded his or her return to mine work could, on the basis of such an accident, with no causative combination or link with the reason chosen for the SSDI award, successfully sue for a pension. The administrative complexities of such a relaxation of the rule, all alone, effectively argue against it.