**Curtis NORMAN,**

v.

**Michael H. HOLLAND, Marty D. Hudson, Elliot A. Segal, Joseph J. Stahl, III, as Trustees of the United Mine Workers' of America, 1974 Pension Plan and Trust.**

**Civil Action No. 3:95–CV–0440.**

United States District Court,
S.D. West Virginia,
Huntington Division.

Sept. 25, 1996.

Robert B. Wilson, Charleston, WV, for plaintiff.

Matilda A. Brodnax, Glenda S. Finch, UMWA Health & Retirement Funds, Washington, DC, Mary Jane Pickens, Shari L. Collias, Susan Cannon–Ryan, Caldwell, Cannon–Ryan & Riffee, Charleston, WV, for defendant.

## MEMORANDUM OPINION AND ORDER

GOODWIN, District Judge.

Pending are cross-motions for summary judgment in Mr. Norman's suit for UMWA 1974 Pension Plan disability benefits for the closed period August 14, 1982 through October 31, 1987. The plaintiff Curtis Norman worked as a shuttle car operator in the mines until he injured his back in an August 12, 1982 mining accident. The Social Security Administration (SSA) has determined that Mr. Norman has been continuously disabled since August 14, 1982, the day he first received treatment following the accident.

In 1983, the SSA awarded Mr. Norman Social Security Disability Insurance (SSDI) benefits based upon a primary diagnosis of subphrenic abscess, which stemmed from gastric stapling surgery in 1980, with a disability onset date of August 14, 1982 (two days after the mine accident). When Mr. Norman's subphrenic abscess improved, the SSA terminated his benefits effective October 31, 1987 but, upon reapplication, granted Mr. Norman a second period of disability starting the next day (November 1, 1987). The second determination was based upon a further diagnosis of "chronic back pain, bur-

sitis, borderline intellectual functioning and atypical depressive disorder."

Based upon his SSDI awards, a prerequisite for a UMWA disability pension, Mr. Norman applied for a disability pension. The defendants, Trustees of the UMWA 1974 Pension Plan (Trustees) acknowledged that Mr. Norman was totally disabled because he received SSDI payments for two periods of disability, which they treated separately. By letter dated November 23, 1994, the Trustees granted Mr. Norman a disability pension for the period November 1, 1987 forward, but denied a pension for the closed period August 14, 1982 through October 31, 1987 because the Trustees determined that Mr. Norman's disability during that period as determined by SSA (subphrenic abscess) did not result from a mining accident. Admin.Rec. at 42–47. Mr. Norman later submitted additional evidence regarding the closed period showing that his disability was due to problems with his back and the subphrenic abscess, including: an affidavit by Mr. Norman; a copy of the West Virginia Supreme Court of Appeals decision finding Mr. Norman permanently disabled and the later Worker's Compensation permanent disability award pursuant to that decision; and SSA documentation from the SSDI evaluation showing that Mr. Norman complained of both back and abdominal pain. By letter dated June 2, 1995, the Trustees again denied Mr. Norman a pension for the closed period because he could not demonstrate that his disability resulted from a mining accident. Admin.Rec. at 1. Mr. Norman instituted suit in this Court on June 14, 1995.

Under Federal Rule of Civil Procedure 56(c), the court shall enter judgment if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Here, there is no material factual dispute between the parties in the extensive administrative record of over two thousand pages.

In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the United States Supreme Court established the standard of review for an ERISA plan's denial of benefits. In *Bruch*, the Court stated: "[A] denial of

benefits challenged under [ERISA] is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115, 109 S.Ct. at 956. If the plan's administrators have discretion, then an administrator's denial of benefits is reviewed using the abuse of discretion standard. *Boyd v. Trustees of the United Mine Workers Health & Retirement Funds,* 873 F.2d 57, 59 (4th Cir.1989). As the Fourth Circuit noted in *Richards v. United Mine Workers of America Health and Retirement Fund,* 895 F.2d 133, 135 (4th Cir.1990), it is unclear whether the *Bruch* "abuse of discretion" standard is synonymous with the pre-*Bruch* "arbitrary and capricious" standard used by the Fourth Circuit, but if a decision was "arbitrary and capricious" pre-*Bruch,* then it would be an "abuse of discretion" under *Bruch. Id.* (citing *Boyd,* 873 F.2d at 60). The Fourth Circuit has held that the UMWA 1974 Pension Plan gives the Trustees discretionary authority to determine eligibility for benefits. *Boyd,* 873 F.2d at 59. Accordingly, the Trustees' decision to deny Mr. Norman's claim for total disability benefits from August 14, 1982, to October 31, 1987, is reviewed under the abuse of discretion standard.

The UMWA 1974 Pension Plan provides: "A Participant who (a) has less than 10 years of signatory service prior to retirement, and (b) becomes totally disabled as a result of a mine accident ... shall, upon retirement ... be eligible for a pension while so disabled. A Participant shall be considered to be totally disabled only if by reason of such accident such Participant is subsequently determined to be eligible for Social Security Disability Insurance Benefits under Title II of the Social Security Act or its successor." *United Mine Workers of America 1974 Pension Plan,* Art. II, pt. D (1981).[1] The Trustees concede that the Social Security Administration determined that Mr. Norman was entitled to disability benefits between August 14, 1982 and October 31, 1987. The Trustees, however, argue that the disability did not

result from the August 12, 1982 mine accident, but was instead caused by a preexisting subphrenic abscess.

The Fourth Circuit has interpreted the 1974 Pension Plan to require that, for a disability to be "as the result of a mine accident," the total disability must be

> proximately caused by the mine accident. That is, if the plaintiff was injured in a mine accident and that injury, whether in combination with a previous or subsequent condition, is substantially responsible for plaintiff's inability to perform his job and for whatever medical and vocational reasons he is unable to perform an alternative job, then his total disability results from a mine accident.

*Boyd,* 873 F.2d at 59 (quoting *Robertson v. Connors,* 848 F.2d 472, 475 (4th Cir.1988)) (quoting *Horn v. Mullins,* 498 F.Supp. 1197, 1200 (W.D.Va.1980), *aff'd* 650 F.2d 35 (4th Cir.1981)).

■ The question before the Court therefore is whether the Trustees abused their discretion when they concluded that the August 12, 1982 mine accident was not substantially responsible for Mr. Norman's total disability between August 14, 1982 and October 31, 1987. *Boyd,* 873 F.2d at 59. This question in turn requires the Court to determine whether the Trustees' decision was supported by substantial evidence. *Horn v. Mullins,* 650 F.2d 35, 37 (4th Cir.1981). The Court will not substitute its judgment for that of the Trustees, but will reverse the Trustees' decision only if it is not supported by substantial evidence.

■ The Court finds that the Trustees abused their discretion when they determined that Mr. Norman's disability did not result from the August 12, 1982 mining accident because substantial evidence does not support their decision that the mining accident was not substantially responsible for Mr. Norman's total disability during the closed period.

---

1. In their brief to the Court, the Trustees cited Art. II, pt. C of the Pension Plan, which concerns mine workers with at least 10 years of service.

The record indicates, however, that Mr. Norman had less that 10 years of service, so Art. II, pt. D is appropriate.

Essentially, the Trustees argue that Mr. Norman's only disability during the closed period was a subphrenic abscess, which they state did not result from the mine accident. The Trustees rely on the following as the evidence supporting their determination that the disability Mr. Norman suffered for which SSDI benefits were awarded during the closed period was a subphrenic abscess: (1) the 1983 SSA disability determination and transmittal form (Admin.Rec. at 146), (2) the SSA vocational rehabilitation form dated May 9, 1983 (Admin.Rec. at 13) with the April 21, 1983 report of Dr. Hunt attached (Admin.Rec. at 208), and (3) the SSA termination rationale form dated August 1987 (Admin.Rec. at 76, 503), each of which notes "subphrenic abscess" as Mr. Norman's disability. They note that Mr. Norman's problems with the subphrenic abscess began two years before the 1982 mine accident. Significantly, the Trustees' letters discussing their denials of pension coverage for the closed period recount much of Mr. Norman's history of back problems stemming from the two mine accidents and even acknowledge that he was off work for compensable back injuries at the same time he was being treated for the subphrenic abscess. Nonetheless, they state that the medical evidence shows no relationship between the mine accident and Mr. Norman's problems with the subphrenic abscess. Thus, they assert that substantial evidence supports their determination that the mine accident was not substantially responsible for Mr. Norman's disability during the closed period.

However, the Trustees misunderstand their responsibility here. They have limited their inquiry to determining whether the accident caused the specific disability noted by SSA in the SSA's determination of eligibility for SSDI benefits. This limited, narrow inquiry is incorrect. The Trustees must determine whether Mr. Norman's total disability resulted from a mine accident, *i.e.*, whether the injury sustained in the mine accident, "whether in combination with a previous or subsequent condition, is substantially responsible for plaintiff's inability to perform his job and for whatever medical or vocational reasons he is unable to perform an alternative job." *Boyd*, 873 F.2d at 59 (quoting *Robert-son v. Connors*, 848 F.2d 472, 475 (4th Cir. 1988) (quoting *Horn v. Mullins*, 498 F.Supp. 1197, 1200 (W.D.Va.1980), *aff'd* 650 F.2d 35 (4th Cir.1981))). That is, the question is whether the mine accident was substantially responsible for Mr. Norman's total disability, not whether it caused the specific disability noted by SSA in their determination of SSDI benefits. *See Chicarelli v. UMWA Health and Retirement Funds*, 943 F.2d 457, 463 n. 7 (4th Cir.1991) ("Chicarelli has insisted that the finding as to mine accident *vel non* as the cause of disability was for the Fund and not the SSA to make. It clearly was and[, instead of assuming that the grounds of disability as found by SSA were absolutely binding on the Trustees,] he should have spent time rather on showing by evidence that, in his case, there was indeed a combination of conditions, including mine accident, which brought about the disability."); *Boyd*, 873 F.2d at 59, 60 (Trustees erred where they asserted that "mine injury was not 'substantially responsible' for the specific disability found [for SSDI purposes]" because "where the specific disability found for SSDI purposes was based upon an injury's effect in exacerbating a preexisting condition or in combining with pre- or post-accident conditions, the whole range of conditions found disabling in combination must be considered proximately caused by the accident for pension plan purposes") (citing *Robertson v. Connors*, 848 F.2d 472, 475–76 (4th Cir. 1988)).

The key factor in this Court's finding that the Trustees abused their discretion is the original date of disability: SSA determined that the disability began on August 14, 1982, only two days after the mine accident on August 12, 1982. Although the date of disability onset is not by itself determinative, the Fourth Circuit has given it "great weight" in determining the cause of disability. *Richards*, 895 F.2d at 138; *see also Robertson v. Connors*, 848 F.2d 472, 475 n. 5 (4th Cir.1988); *Horn*, 650 F.2d at 37. Indeed, in *Horn*, where the disability onset date was only two days after the date of the mining accident (as it is here), the Fourth Circuit characterized it as the "critical factor." *Horn*, 650 F.2d at 37.

Additionally, until the mine accident in August 1982, Mr. Norman was always able to return to work despite his recurrent problems with the subphrenic abscess. As the Trustees stressed, Mr. Norman began experiencing regular problems with the subphrenic abscess as much as two years before the accident. However, between January 1982 (the latest date of draining of the abscess) and August 12, 1982 (the date of the mine accident), Mr. Norman was able to work, yet since the accident Mr. Norman has not been able to work. *See Robertson,* 848 F.2d at 474, 476 (finding that record cannot support Trustees decision that injury received in mine accident was not substantially responsible for total disability where disability benefits began effective date of accident and prior to accident claimant's existing maladies, which Trustees emphasized as source of disability, did not prevent return to work). *Cf. Chicarelli,* 943 F.2d at 458 (noting fact that *"always following injury from a mine accident Chicarelli resumed working* until heart disease and diabetes felled him[ ] effectively prevented a decision that the Fund has abused its discretion in denying an award to Chicarelli on the basis that mine accident alone, *i.e.,* uncombined with heart disease or diabetes, had not been the cause of Chicarelli's total disability.") (emphasis added).

Moreover, the Court notes that although the Trustees stressed that Mr. Norman had problems with his subphrenic abscess both before and after the accident, they point to no evidence in the extensive record of documented problems with Mr. Norman's subphrenic abscess from seven months before the disability onset date (January 1982, when Mr. Norman was treated by Dr. Lavery and Dr. Vogt) until five months after the disability onset date (January 1983, when Dr. Cochrane treated Mr. Norman).

Furthermore, Mr. Norman's entire disabling condition must be examined. *See Boyd,* 873 F.2d at 59–60; *Robertson,* 848 F.2d at 475–76; *Horn v. Mullins,* 498 F.Supp. 1197, 1200 (W.D.Va.1980), *aff'd* 650 F.2d 35 (4th Cir.1981). Here, Mr. Norman's back problems were documented as disabling well into the closed disability period. SSA forms report problems with his back during 1983.

He received workers' compensation temporary total disability and permanent partial disability awards based upon his back injuries sustained in the August 1982 mine accident. Dr. Mattill found Mr. Norman disabled and unable to return to work in April 1983, noting bitter complaints of back pain and stating that Mr. Norman did not appear recovered from his back problems. Admin.Rec. at 1485–86. Although he noted that Mr. Norman's condition was improving, Dr. Hernandez found chronic back discomfort that was "exquisitely tender to palpation" in an October 1983 examination. Admin.Rec. at 1522, 1539, 1566. A letter dated December 10, 1984 to a Workers' Compensation Rehabilitation Coordinator reporting the results of a "Physical and Functional Capacity Evaluation" performed on Mr. Norman on December 5, 1984 stated that "It is unfortunate that Mr. Norman appears to be highly motivated, but due to his back pain and additional medical problems he is unable to return to work." Admin.Rec. at 232, 234. Dr. Hernandez noted chronic traumatic fibromyositis in February 1985 that he attributed to the 1982 mining accident. Admin.Rec. at 47 (as noted in Trustees' November 1994 letter denying UMWA Pension Plan benefits for the closed period). Also, in a letter dated June 15, 1985 to Jane Taylor, a Workers' Compensation Rehabilitation Coordinator, Christopher Friley, a Vocational Evaluator, stated that "Mr. Norman's primary disabling condition results from an injury to his lower back." Admin.Rec. at 238.

Finally, in their November 1994 letter denying a disability pension for the closed period, the Trustees state as one of the reasons for finding a causal relationship between Mr. Norman's disability and a mine accident, and thus for granting the disability pension for the period *after November 1, 1987,* that "Dr. Hernandez has stated in February *1985* that Mr. Norman suffered from chronic traumatic fibromyositis of the lumbar spine, and he related this to the 1982 mine accident." Admin.Rec. at 47 (emphasis added). Thus, although denying a pension for the closed period ending in 1987 because Mr. Norman could not demonstrate a causal relationship between his mine accident and his disability, the Trustees specifically note a finding of

chronic traumatic fibromyositis from 1985 (during the closed period) as supporting their determination that Mr. Norman was disabled *after* November 1, 1987 because of a mining accident. If a finding of chronic traumatic fibromyositis in 1985 resulting from the 1982 accident supports a conclusion of compensable disability after November 1987, surely it is an abuse of discretion to find that the same injury and same finding does not support a conclusion of compensable disability during the very time period in which the finding was made, *i.e.*, 1985 (or during the closed period).

In summary, there is the strong coincidence of the date of the accident and the date of the disability onset *and* a large period of time during which the only documented disability is back problems *and* documentation that the back problems were disabling well into the closed period. Furthermore, the Trustees point to evidence of Mr. Norman's disability due to back problems in 1985 (during the closed period) as evidence of his disability beginning in late 1987, but ignore that evidence for the closed period during which the finding was made. Clearly, then, the Trustees' decision that the mine accident did not proximately cause or was not substantially responsible for Mr. Norman's total disability is not supported by substantial evidence; the Trustees have abused their discretion in denying Mr. Norman's disability pension during the closed period; and he is entitled to his disability pension for the closed period in question.

 Mr. Norman has requested an award of pre-judgment interest. "ERISA does not specifically provide for pre-judgment interest, and absent a statutory mandate the award of pre-judgment interest is discretionary with the trial court." *Quesinberry v. Life Ins. Co. of North America,* 987 F.2d 1017, 1030 (4th Cir.1993) (en banc) (citing *Whitfield v. Lindemann,* 853 F.2d 1298, 1306 (5th Cir.1988), *cert. denied,* 490 U.S. 1089, 109 S.Ct. 2428, 104 L.Ed.2d 986 (1989)). A district court may award pre-judgment interest to compensate a plaintiff for the loss of the use of money and to make the plaintiff whole. *See Quesinberry,* 987 F.2d at 1031; *Cotter v. Eastern Conference of Teamsters Retirement Plan,* 898 F.2d 424, 429 (4th Cir.

1990). "The rate of pre-judgment interest for cases involving federal questions is a matter left to the discretion of the district court." *Quesinberry,* 987 F.2d at 1031 (citing *United States v. Dollar Rent A Car Systems, Inc.,* 712 F.2d 938, 940 (4th Cir. 1983) (citing *E.E.O.C. v. Liggett & Myers, Inc.,* 690 F.2d 1072, 1074 (4th Cir.1982))).

Mr. Norman should have been awarded a disability pension initially and was denied his pension only as a result of the Trustees' abuse of their discretion. For that reason, and to afford Mr. Norman complete relief, Mr. Norman should be granted pre-judgment interest from the date he should have initially received his disability pension. The Court finds that the appropriate rate of interest is the rate according to the federal interest statute, 28 U.S.C. § 1961 (1988 & Supp.1996).

There being no genuine issue as to a material fact and, for the reasons stated, the plaintiff Mr. Norman being entitled to judgment as a matter of law, the Court **GRANTS** the plaintiff's motion for summary judgment and **DENIES** the defendants' motion for summary judgment. Accordingly, the Court **ORDERS** that Mr. Norman be granted a disability pension under the UMWA 1974 Pension Plan for the closed period August 14, 1982 through October 31, 1987, with interest. Finding no reason to award costs, the Court **ORDERS** that each party is to bear its own costs.