Howard **VERNATTER**, Plaintiff,

v.

Michael H. **HOLLAND**,
et al., Defendants.

No. Civ.A. 5:96–1824.

United States District Court,
S.D. West Virginia.

April 28, 1998.

Richard Rundle, Rundle & Rundle, Pineville, WV, for Plaintiff.

Mary Jane Pickens, Caldwell, Cannon–Ryan & Riffee, Charleston, WV, for Defendant.

## MODIFIED MEMORANDUM OPINION AND ORDER

HALLANAN, Senior District Judge.

This matter is before the Court via the Parties' cross motions for summary judgment and memoranda in support thereof.

Having carefully reviewed the Parties' motions, memoranda, and exhibits, the Court is now prepared to render its ruling.

### I.

Plaintiff initiated this action pursuant to Section 502 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Section 1132 *et seq.* The issue before the Court is whether the Defendant Trustees of the United Mine Workers of America 1974 Pension Trust abused their discretion in denying Plaintiff disability pension benefits on the basis that he has failed to establish that his disability is the result of a mine accident.

### II.

This matter essentially revolves around a dispute over the existence of an alleged mining accident in June of 1984. Plaintiff claims that during June of 1984 he was involved in a rock fall while performing classified work for a signatory employer. Defendants deny the accident's occurrence. However, they do note that "[Plaintiff] would be entitled to a disability pension under the 1974 Pension Plan if his emotional problems as determined by the SSA were caused by the alleged June 11, 1984 mine accident." Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment (hereinafter "Defendants' Memorandum") at 24.

On February 26, 1986, Administrative Law Judge Virginia Mae Brown (hereinafter "the ALJ") granted Plaintiff's request for disability insurance benefits, setting his disability onset date as August 1, 1984. It is apparent that the ALJ based Plaintiff' award of disability upon psychological rather than physical limitations, as she declared "claimant's complaints about pain, discomfort, and exertional limitations attributable to his orthopedic and respiratory problems [to be un] substantiated by the evidence and therefore not credible." Administrative Record at 148. The ALJ clearly found that the "medical evidence establishes that the claimant has severe post-traumatic stress disorder, anxiety and depression . . ." and that "claimant is unable to perform his past relevant work as a coal miner or other employment because of significant anxiety, depression and post-traumatic stress difficulties." Id.

A careful review of the ALJ's decision reveals that the ALJ accepted as fact the occurrence of Plaintiff's alleged mining accident of June 1984. Further, the ALJ held that it was the June 1984 mining accident which, to the near exclusion of all other factors, brought about Plaintiff's permanent disability. Specifically, the ALJ determined that:

[A]nxiety and post traumatic stress related difficulties in connection with a June 1984 cave in in which [Plaintiff] was nearly buried alive have greatly impaired [Plaintiff's] ability to acceptably interact with co-workers, supervisors, the public, or deal with even minimal stress encountered in a variety of routine, unskilled, entry level occupations.

Administrative Record at 147. Thus it is evident that the ALJ (1) found Plaintiff to be disabled, (2) found Plaintiff's disability to be largely predicated upon psychological impairments, and (3) found the contested mining accident to be the predominant cause of Plaintiff's psychological impairments.

Defendants, in their decision denying Plaintiff's application for a disability pension under the 1974 Pension Plan, addressed the alleged accident of June 1984 summarily by stating only the following:

Based on information provided by [Plaintiff], there appears to be a second accident in June of 1984. There is no evidence available to suggest that the June 1984 accident met Plan provisions as there is no accident report. There are also no medical

reports available regarding this June 1984 accident.

Administrative Record at 40. There was no mention of the fact that the ALJ made a determination that the accident occurred during a roof-fall or cave-in, an event which clearly would meet the requirements of Q & A 252. Likewise, Defendants found no causal link between any mine accident suffered by Plaintiff and Plaintiff's ensuing total disability, but however failed to address the ALJ's distinct finding of just such a causal link. The Defendants' decision further failed to examine any of the evidence supporting the existence and disabling nature of the alleged mining accident of June 1984, or offer any evidence which Defendants may have relied upon to refute the same.

## III.

It appears that Defendants, in reaching their decision to deny Plaintiff's application for a disability pension based on the alleged incident of June 1984, relied solely upon the fact that there was neither an accident report nor any contemporaneous medical records detailing the alleged mining accident. As the Fourth Circuit Court of Appeals apparently found in *Richards v. United Mine Workers of America Health and Retirement Fund,* 895 F.2d 133 (4th Cir.1990), such deficiencies do not automatically trump all other evidence and effectively terminate the requisite inquiry.

*Richards* dealt with a dispute as to the time and place of the occurrence of the disabling condition, plaintiff's heart attack. The Trustees in *Richards* had determined that the plaintiff's heart attack had occurred away from the work site and one day after the date on which the plaintiff claimed his heart attack occurred. After weighing the evidence, the Fourth Circuit concluded that the Trustees had indeed abused their discretion. The deciding factor was the ALJ's determination of the appropriate disability onset date. The ALJ determined that the plaintiff's disability had commenced on a day when the plaintiff was in fact at work. The weight provided

the ALJ's finding effectively diminished all contrary evidence to the point of insignificance.

In relating *Richards* to the facts of the case at bar, this Court finds that a primary usefulness of the ALJ's determination of disability onset is its ability to gauge the thoughts of the ALJ; does the date support the notion that the ALJ found a causal link between the accident at issue and the onset of permanent disability? Arguably, often the ALJ is not specific in declaring a causal link, thus the need for this type of interpretation. However, in this case the Court requires no extrasensory perception as the ALJ has stated in clear terms that the mining accident caused Plaintiff's psychological impairment, and that said impairment was the deciding factor in determining Plaintiff to be permanently disabled. *Richards* declared that the ALJ's determination as to disability onset should be given great deference. The Court sees no reason why any less deference should be given to the ALJ's findings of causation in the matter at bar.

Additionally, the Court finds a review of all evidence, including the determinations of the ALJ, to be at least as favorable to Plaintiff in the current action as was the similar review of evidence in *Richards.* In Defendants' favor are the following:

1. The lack of any employer accident report or contemporaneous medical records; and

2. Various inconsistencies with regard to severity and date of the accident.[1]

The mere absence of accident reports or medical records alone is not formidable enough evidence to conclude that no accident occurred, especially in light of the distinct evidence offered by Plaintiff. The evidentiary factors in Plaintiff's favor cannot simply be wholly discredited because of lacking documentation. *Richards* seems to make that much clear.

In addition, the Court finds the discrepancies raised by Defendants to be rather insignificant. Defendants note that Plaintiff has,

---

1. Defendants also allege that Plaintiff was likely on vacation during the date which he claimed the accident occurred. Defendants have offered

no specific proof which would allow such a theory to rise above mere speculation.

over a number of years, given diverse dates with regard to the occurrence of the alleged accident. A review of Defendants' Memorandum indicates that those given dates ranged from the 7th to the 11th of June, 1984. The Court does not find such a limited span to discredit Plaintiff's evidence, or the findings of the ALJ.

Likewise, it appears that Defendants are asking the Court to draw conclusions based upon the variance between Plaintiff's statements "a piece of rock fell on me," "I was covered up by rock," and "I was struck by a piece of falling rock." As the Court finds the statements predominantly synonymous, it shall decline Defendants' invitation.

As the Court stated above, none of the foregoing arguments or rational relating to discrepancies in Plaintiff's statements were discussed by the Trustees in their decision denying Plaintiff's pension benefits. In fact, no rationale what-so-ever, other than a lack of accident reports and contemporaneous medical records, was submitted by Defendants in that decision.

On the other hand, evidence supporting Plaintiff includes:

1. Plaintiff's own statements and testimony;

2. Medical records of Drs. M.I. Ranavaya, Nasreen Dar and Robert Miller;

3. Statements by co-workers who witnessed the alleged accident; and

4. The disability award of the ALJ, setting the disability onset date as August 1, 1984.

Over the course of the last thirteen years, Plaintiff's statements have remained relatively consistent. Plaintiff has repeatedly proclaimed that the accident occurred, and that the accident caused him to suffer varying physical and psychological trauma. Plaintiff was making such statements well before his disability pension became an issue.

The reports of Dr. Miller (Administrative Record at 416–418) are quite difficult to interpret. However, they do suggest that Plaintiff may have suffered some sort of trauma to his nose which may be indicative of the accident alleged. The Court finds those records to be less than conclusive.

A psychiatric evaluation conducted by Dr. Dar on October 23, 1987 catalogs a number of findings relating to Plaintiff's psychological well being. Administrative Record at 243–244. Plaintiff was diagnosed as suffering from Generalized Anxiety Disorder–Moderate. Dr. Dar noted the alleged accident of June 1984, however, he made no specific finding that the accident occurred. Rather he was reiterating what Plaintiff himself felt to be the cause of his psychological impairments.

On July 14, 1995, Plaintiff was examined by Dr. Mohammed I. Ranavaya. Dr. Ranavaya appeared to conclude that the alleged incident did indeed occur, and that said incident left Plaintiff both physically and psychologically impaired. Specifically, Dr. Ranavaya found Plaintiff to be suffering "from post-traumatic stress disorder ... as a result of his June 11, 1984 injuries." *Id.* at 7. In addition, Dr. Ranavaya concluded that the accident "obviously has left him with a nasal deformity and significant disfigurement." *Id.* Defendants' decision neither reviewed Plaintiff's medical evidence with respect to the alleged accident, nor offered any rebuttal evidence to the same.

The administrative record further reveals three sworn statements made by Plaintiff's co-workers relating to the accident. Each of the identical statements declared, "I witnessed the mine accident on 6–11–84, in which [Plaintiff] ... was involved." Administrative record at 346–348. Defendants claim that such statements lack specificity. However, Defendants claim no accident took place. The statements strike the court as evidence that something happened on that day.

And finally, there is the determination of the ALJ. The ALJ set Plaintiff's date of disability as August 1, 1984, which appears to take into account the last day which Plaintiff was able to perform any work at the mine site. Clearly the date of disability is closer in time to the alleged mining accident than to any other possible cause of Plaintiff's disability. And as noted above, the ALJ left no doubt as to her feelings of whether a causal

link existed between the accident of June 1984 and the ensuing disability.

### IV.

Defendants as trustees owe a fiduciary duty to grant benefits to Plaintiff if, in accordance with the requirements of the 1974 Pension Plan, he can demonstrate that he has been totally disabled as a result of a mine-related injury suffered while performing classified work for a signatory employer. *UMWA Health & Retirement Funds v. Robinson,* 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982).

The governing eligibility requirements for a disability pension are set forth in Article II. C of the 1974 Pension Plan which provides in pertinent part that:

> [A] Participant who ... becomes totally disabled as a result of a mine accident ... shall upon retirement ... be eligible for a pension when so disabled. A participant shall be considered to be totally disabled only if by reason of such accident such Participant is subsequently determined to be eligible for Social Security Disability Insurance (SSDI) Benefits under Title II of the Social Security Act or its successor.

Accordingly, to be eligible for a disability pension, Defendants must first determine whether Plaintiff has received an SSDI award and identify the medical condition upon which the award was based. Then Defendants must establish whether there is a causal link between the SSDI benefits granted and a mine accident. In this way, to receive pension benefits, Plaintiff must demonstrate that he is "totally disabled as a result of a mine accident." The United States Court of Appeals for the Fourth Circuit has held that:

> [U]nder the terms of the UMWA 1974 Pension Plan, a Social Security disability award conclusively establishes the medical disability of the pension applicant. The Pension Plan further requires that the applicant show that he became disabled "as a result of a mine accident." ... "The only reasonable interpretation of the requirement that total disability be 'the result of a mine accident,' therefore, is that it requires total disability to have been proxi-

mately caused by the mine accident. That is, if the plaintiff was injured in a mine accident and that injury, whether in combination with a previous or subsequent condition, is substantially responsible for plaintiff's inability to perform his job and for whatever medical and vocational reasons he is unable to perform an alternative job, then his total disability results from a mine accident."

*Robertson v. Connors,* 848 F.2d 472, 475 (4th Cir.1988) (quoting *Horn v. Mullins,* 498 F.Supp. 1197, 1200 (W.D.Va.1980), *aff'd.* 650 F.2d 35 (4th Cir.1981)) (footnotes omitted).

Thus, in summary, Plaintiff must establish that: (1) he suffered a "mine accident;" (2) he received an SSDI award; and (3) there exists a causal connection between the disability for which he was awarded SSDI benefits and the mine accident and resultant injuries.

### V.

Plaintiff received SSDI benefits with an onset date of August 1, 1984. The ALJ's determination is conclusive evidence of disability for purposes of the pension plan. *Boyd v. Trustees of UMWA Health & Retirement Funds,* 873 F.2d 57, 59 (4th Cir.1989) (citing *Robertson v. Connors,* 848 F.2d at 475). It seems only rational to maintain that if the ALJ's determinations as to disability are conclusive, then the reasons relied on for the finding of disability should likewise be treated as conclusive. When the ALJ declares that an individual is disabled because of X, it seems illogical to accept as fact the disability but dispute X, the cause of the disability.

The Trustees, in their decision, offered no evidence or reason for discounting the findings of the ALJ beyond the absence of specific records made at the time of the accident. Such reasoning was not sufficient in *Richards,* and the Court can see no reason why it should be considered sufficient or conclusive here. Accordingly, the Court finds that "[t]he Trustees have failed to produce sufficient evidence to leave in balance or to outweigh the deference ... accord[ed] to the determination of the Social Security Administration." *Richards* at 138. The Court thus

**412**

finds the Trustees denial of Plaintiff's application for disability pension to have been unsupported by substantial evidence, and therefore an abuse of their discretion.

## VI.

The evidence shows that the alleged accident of June 1984 in fact occurred, that the accident was responsible for Plaintiff's psychological deficiencies and that it was those deficiencies which permanently disabled Plaintiff. Hence, the Court finds that Plaintiff is entitled to disability benefits under the terms of the plan. Therefore, it is hereby **ORDERED** that **Plaintiff's** Motion for Summary Judgment be **GRANTED** and that **Defendants'** Motion for Summary Judgment be **DENIED.** It is further **ORDERED AND ADJUDGED** that Judgment in this action shall be entered in favor of Plaintiff and against Defendants. The Clerk is directed to remove this action from the docket of this Court and to mail a certified copy of this Order to all counsel of record.