**Gaynell BOYD, Plaintiff–Appellant,**

v.

**TRUSTEES OF THE UNITED MINE WORKERS HEALTH & RETIREMENT FUNDS, Defendant–Appellee.**

**No. 88–2558.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 10, 1989.

Decided April 21, 1989.

John Michel Lamie (Browning, Morefield, Lamie & Sharp, P.C., on brief) for plaintiff-appellant.

Janet F. Alberghini (Andree M. St. Martin, Associate Gen. Counsel, UMWA Health and Retirement Funds, on brief) for defendant-appellee.

Before PHILLIPS and CHAPMAN, Circuit Judges, and TILLEY, United States District Judge for the Middle District of North Carolina, sitting by designation.

PHILLIPS, Circuit Judge:

Gaynell Boyd appeals from the district court's affirmance of a decision by the Trustees of the United Mine Workers Health and Retirement Funds (Trustees) denying her eligibility for disability pension benefits under the Mine Workers' Pension Plan. We find that the Trustees' decision was an abuse of discretion and reverse.

I

Boyd is a former coal miner who worked in the industry from 1979 to September 1983. On July 30, 1982, she suffered a cervical spine sprain when a timber fell on her shoulder. The injury was sufficiently severe that she did not go back to work until approximately the beginning of September and then worked for only three weeks before returning to her doctor, complaining of continuing neck, shoulder, and arm pain. She was seen by various physicians over the course of the next several months and did not return to work until June 3, 1983. Boyd continued her employment until sometime in late September, stopped for a brief period (apparently because of another, undocumented mine injury that aggravated her existing condition), went back to work for a week, then finally stopped work on September 30, 1983, again complaining of persisting pain.

Boyd was subsequently hospitalized on October 19 for her complaints of neck, right shoulder, and arm pain. She was discharged on November 6. Boyd's pain continued, and her doctor finally referred her to the Duke Medical Center the following spring to attempt to diagnose and resolve her problem. Boyd spent four days at the Duke Pain Center in April 1984 and was diagnosed as having right shoulder and arm pain and was put on a pain management program. She was readmitted on June 11 both for further physical tests and for neuropsychiatric testing and was discharged July 13. Boyd was again hospitalized at Duke from September 15 to October 3.

On Boyd's application for social security disability insurance (SSDI) benefits, an Administrative Law Judge (ALJ) found in August 1985 that "exhaustive medical evaluation and testing over the past five years has failed to disclose any objective evidence of a significant long-term injury or disease from a neurological, orthopedic or vascular standpoint." The ALJ went on to hold, though, that Boyd satisfied the requirements for disability from severe mental impairment under § 12.05(C) of the regulations and that she had been so disabled since September 30, 1983, her last date of work. Section 12.05 defines mental retardation, and subsection C states that the required level of severity is met when a person is measured to have "[a] valid verbal, performance, or full scale IQ of 60 to 69 inclusive and a physical or other mental impairment imposing additional and significant work-related limitation of function." 20 C.F.R. § 404, Subpart P, App. 1, § 12.05(C). For the determination of Boyd's IQ score, the ALJ relied on two psychological evaluations performed at Duke on June 21, 1984 and October 17, 1984, which found that Boyd scored 69 or below on at least one of the WAIS–R (IQ) tests. Based on the other available medical evidence, the ALJ found that Boyd's additional impairments were mental and emotional in nature.

Boyd applied for disability pension benefits under the UMW Pension Plan on August 30, 1985. To be eligible for these benefits, a miner who has less than ten years of employment must be "totally disabled as the result of a mine accident." United Mine Workers of America 1974 Pension Plan, Art. II.D (1981) ("Pension Plan"). A miner is considered totally disabled "only if by reason of such accident such [miner] is subsequently determined to be eligible for Social Security Disability Insurance Benefits...." *Id.*

Acting for the Trustees, a Field Service Office denied Boyd benefits in May 1986, on the basis that she had not established that her disability was caused by a mine accident. In October 1986, the Trustees affirmed this decision by a UMW Decision on Review. The latter decision relied on a review of Boyd's medical records conducted by the Pension Fund's medical staff. This

review concluded that Boyd's symptoms began with an automobile accident in 1979, where she suffered a post-concussion syndrome, and that there was no causal link between any mine accident and Boyd's disability as determined for SSDI purposes.

In March 1987, Boyd filed suit against the Trustees in federal district court. Agreeing that the Trustees had substantial evidence for their decision denying Boyd pension benefits, the district court granted the Trustees' motion for summary judgment in May 1988. This appeal followed.

## II

Until the Supreme Court's recent decision in *Firestone Tire & Rubber Co. v. Bruch*, — U.S. —, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the standard for reviewing Trustees' disability decisions under this pension plan was, in this and most other circuits, whether the decision was arbitrary or capricious. *Robertson v. Connors*, 848 F.2d 472, 475 (4th Cir.1988); *Horn v. Mullins*, 650 F.2d 35, 37 (4th Cir.1981). *Bruch* made that no longer appropriate. Applying traditional trust principles to ERISA cases, the *Bruch* Court held that a denial of pension benefits under the Plan here in issue should be "reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* — U.S. at —, 109 S.Ct. at 956. Where the administrator or fiduciary has discretionary authority, an abuse of discretion standard should apply. *Id.* at —, 109 S.Ct. at 955. That standard now controls our review here.

There is no question that the Trustees of the UMW Pension Plan here have discretionary authority, since they have the power of "full and final determination as to all issues concerning eligibility for benefits" and "are authorized to promulgate rules and regulations to implement this Plan...." Pension Plan, Art. VIII.A, B(1). Therefore, we must review the Trustees' decision denying Boyd disability pension benefits for abuse of discretion.

We have held that for someone to be deemed totally disabled "as the result of a mine accident," as the Pension Plan requires, Art. II.D, the total disability must be

> "proximately caused by the mine accident. That is, if the plaintiff was injured in a mine accident and that injury, whether in combination with a previous or subsequent condition, is substantially responsible for plaintiff's inability to perform his job and for whatever medical and vocational reasons he is unable to perform an alternative job, then his total disability results from a mine accident."

*Robertson*, 848 F.2d at 475, *quoting Horn v. Mullins*, 498 F.Supp. 1197, 1200 (W.D. Va.1980), *aff'd* 650 F.2d 35 (4th Cir.1981).

The Trustees do not contest that under the Pension Plan "a Social Security disability award conclusively establishes the medical disability of the pension applicant." *Robertson*, 848 F.2d at 475. Rather, the Trustees contend that Boyd's mine injury was not "substantially responsible" for the specific disability found by the ALJ.

The ALJ held that the medical evidence established that "the claimant had severe mental and emotional impairments." According to the medical evidence, Boyd's "mental" impairment was a cognitive dysfunction (organic brain syndrome), while her "emotional" impairment stemmed in particular from depression (dysthymic disorder) and anxiety. Taken together with Boyd's low IQ scores, these impairments sufficed for the ALJ to find that Boyd had satisfied the disability requirements of § 12.05(C).

The Trustees argue that neither Boyd's cognitive dysfunction nor her emotional impairment was proximately caused by her mine accident. We differ with the Trustees only on the latter point.

Boyd has abandoned on this appeal her original position that her cognitive dysfunction was proximately caused by the mine accident. Substantial evidence supports the Trustees' determination that not the mine accident—which involved a blow to the shoulder, not the head—but an earlier automobile accident was the more likely

cause of any organic brain damage traceable to trauma. Hence this determination lay within the Trustees' discretion.

■ The Trustees also contend, though, that Boyd's mine injury was not "substantially responsible" for her emotional impairment, citing evidence of emotional instability antedating her mine accident. We disagree. Our prior holding in *Robertson*, which is based on quite analogous facts, is controlling.

The Trustees emphasized Robertson's previous psychiatric complaints, some of which were similar to the problems exhibited after the mine accident. Those previous psychiatric problems, however, were not permanently disabling. Uncontradicted evidence shows that from the date of the mine injury Robertson persistently complained of debilitating pain and repeatedly was diagnosed as having hypochondriacal neurosis, psychological overlay, and other ailments. It is true that in the mines he suffered only a comparatively minor neck injury and that the resulting symptoms may have been aggravated by a previous neck injury. Importantly, however, prior to the mine accident, his manifestations of pain did not prevent his return to work. To be entitled to a disability pension, Robertson was only required to show that his mine injury proximately caused or was substantially responsible for his disability. In short, the Trustees' determination that the combined psychological and physical effects of the injury received in the mine accident did not substantially cause Robertson's total disability cannot be supported by the record.

848 F.2d at 476. The evidence in Boyd's case is also plain that from the date of her mine injury in July 1982, Boyd continuously complained of debilitating pain, repeatedly sought medical assistance for this pain, and finally was unable to continue work because of the disabling psychological effects of her injury. Whatever the contributions of her prior mental and emotional condition and whatever the actual physical injury directly suffered in the mine accident, Boyd's mine accident was "substantially responsible" for her total disability as found for SSDI purposes.

*Robertson* in effect sets bounds on the range of discretion that the Pension Plan confers on the Trustees to deny claims under the circumstances presented here. *Robertson* held that it was arbitrary and capricious for the Trustees there to decide that a miner was not totally disabled as the result of a mine accident by concentrating solely upon the direct physical injury caused by the accident. Instead, we held, where the specific disability found for SSDI purposes was based upon an injury's effect in exacerbating a preexisting condition or in combining with pre- or post-accident conditions, the whole range of conditions found disabling in combination must be considered proximately caused by the accident for pension plan purposes. 848 F.2d at 475–76.

It is obvious that to the extent it would be arbitrary and capricious under our pre-*Bruch* standard to deny benefits on such a basis, it would be an abuse of discretion to deny them under the *Bruch* standard.

The Trustees' denial of disability pension benefits to Boyd is therefore reversed.

REVERSED.