919 F.2d 139
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Johnny D. LINVILLE, Plaintiff-Appellant,
v.
Joseph P. CONNERS, Sr., William Miller, Donald E. Pierce,
Jr., William B. Jordan, Paul R. Dean, as trustees of the
1974 Pension Trust and the 1974 Benefit Plan and Trust, and
the United Mine Workers 1974 Pension and Trust Benefit
Trust, Defendants-Appellees.
 
 No. 90-2330.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 5, 1990.
Decided Nov. 30, 1990.
 Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Dennis R. Knapp, Senior District Judge. (CA-89-125-2)
 Roger Daniel Forman, Forman, Kanner & Crane, Charleston, W.Va., (argued) for appellant; Cathy Rider Culhane, Forman, Kanner & Crane, Charleston, W.Va. on brief.
 Angela Turkett Kennedy, UMWA Health and Retirement Funds, Washington, D.C., (argued) for appellees; Andree M. St. Martin, UMWA Health and Retirement Funds, Washington, D.C. on brief.
 S.D.W.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, and WILKINS and NIEMEYER, Circuit Judges.
 PER CURIAM:
 
 
 1
 This appeal arises from the denial of Johnny D. Linville's application for disability pension benefits by the Trustees of the United Mine Workers of America's 1974 Pension and Benefit Trust. Linville sought to set aside the Trustees' decision in an action for wrongful denial of benefits in the United States District Court for the Southern District of West Virginia at Charleston. The district court, by memorandum opinion entered January 31, 1990, granted the Trustees' motion for summary judgment. We affirm the district court's decision.
 
 
 2
 * Linville was injured in a work-related accident on June 11, 1980. He received temporary total disability benefits from the West Virginia Worker's Compensation Fund as a result of this injury, diagnosed as severe lumbrosacral strain. He returned to work in February or March of 1981 and continued to work until December 1985, when he was laid off.
 
 
 3
 In March 1986 Linville developed kidney and urinary problems, for which he eventually underwent successful surgery to remove a malignant spinal cord tumor in April 1986. Following the surgery, he continued to have pain, limited back motion, weakness of the legs, and bladder dysfunction. He applied for Social Security Disability Insurance ("SSDI") benefits on July 17, 1986, giving his date of disability as March 12, 1986. He was found eligible for these benefits as of March 12, 1986, based on the surgical removal of his tumor and the related neurogenic bladder condition.
 
 
 4
 Linville applied twice to the 1974 Pension Trust for a disability pension, first on July 28, 1987, and again on April 26, 1988. His application was denied both times, on the basis that no causal link existed between Linville's mine accident and his disability. On Linville's appeal to the Southern District of West Virginia at Charleston, the district court found that there was substantial medical and other evidence to support the Trustees' denial of benefits to Linville. This appeal followed.
 
 II
 
 5
 The question on review is whether there was substantial evidence before the Trustees to support their conclusion that there was no causal link between Linville's mine injury and his current disability. Because this Circuit has determined that the 1974 Pension Plan expressly vests the Trustees with "full and final" authority in determining eligibility for benefits from the 1974 Pension Trust, our review of the Trustees' determination is limited to ascertaining whether the Trustees abused their discretion. Boyd v. Trustees of the UMWA Health & Retirement Funds, 873 F.2d 57, 59 (4th Cir.1989) (applying Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989)).
 
 
 6
 Article II.D of the 1974 Pension Plan contains the eligibility requirements for pension benefits from the 1974 Pension Trust. This article provides in pertinent part:
 
 
 7
 A Participant shall be considered to be totally disabled [as the result of a mine accident] only if by reason of such accident such Participant is subsequently determined to be eligible for Social Security Disability Insurance Benefits under Title II of the Social Security Act or its successor.
 
 
 8
 (Emphasis added). This Court has held that, for an individual to be deemed totally disabled as the result of a mine accident, as Article II.D requires, the total disability must be
 
 
 9
 proximately caused by the mine accident. That is, if the plaintiff was injured in a mine accident and that injury, whether in combination with a previous or subsequent condition, is substantially responsible for plaintiff's inability to perform his job and for whatever medical and vocational reasons he is unable to perform an alternative job, then his total disability results from a mine accident.
 
 
 10
 Boyd v. Trustees, 873 F.2d at 59, quoting Horn v. Mullins, 498 F.Supp. 1197, 1200 (W.D.Va.1980), aff'd, 650 F.2d 35 (4th Cir.1981).
 
 
 11
 The Trustees based their denial of benefits to Linville on the following evidence of lack of proximate cause between the injury and the current disability: (1) medical evidence which indicates that Linville fully recovered from his back injury and that the tumor was not present at the time of injury; (2) the award of SSDI disability benefits to Linville on the basis, not of his mine injury, but of his tumor surgery and related effects; and (3) the gap of almost six years between the injury and the SSDI date of disability, combined with the lack of evidence that Linville made any complaints or sought medical treatment for his back during that interval.
 
 Medical Evidence
 
 12
 The Trustees presented medical evidence to demonstrate that by late 1980 Linville's condition had improved. X-rays of Linville's lumbosacral spine taken in late 1980 appeared to be normal; they revealed neither bony abnormalities nor the presence of a tumor. The record also shows sufficient improvement that Linville was able to return to work until he was laid off for nonmedical reasons. There is no evidence in the record to indicate that Linville continued to have pain or other symptoms from his back between late 1980 and early 1986. The Trustees observed that Dr. Ignatiadis, Linville's treating physician and the surgeon who removed his tumor, stated that he doubted that the tumor was present in 1980.
 
 
 13
 Linville first advanced the theory that the tumor was a silent, pre-existing condition which was made symptomatic by the injury. In support of this theory, Linville presented testimony from three examining physicians, as well as other statements Dr. Ignatiadis made which directly contradict his statement that he doubted that the tumor was present in 1980. In an apparent attempt to reconcile Dr. Ignatiadis's contradictory statements, Linville then adopted the theory that the tumor developed after 1980 and was caused by the injury. However, Linville offered no evidence to show such a causal relationship between the injury and the tumor.
 
 
 14
 Likewise, Linville produced no evidence showing that he sought treatment for any continuous pain or other symptoms once he returned to work after the 1980 injury. In two recent cases which, like this one, involved a work injury and a prior or subsequent condition which were alleged to have together caused the plaintiff's disability, this Court relied on evidence of the continuation of the plaintiff's complaints and efforts to get medical assistance in concluding that the work injury was the proximate cause of the disability. See Boyd, supra, 873 F.2d at 60; Robertson v. Connors, 848 F.2d 472 (4th Cir.1988). Together with the Trustees' medical evidence to the effect that Linville had much improved by late 1980, this omission could have caused the Trustees to reasonably conclude that there was no connection between the 1980 injury and the tumor, which appeared to have developed years later at a different location in Linville's spine.
 
 SSDI Evidence
 
 15
 For purposes of the 1974 Pension Plan, the claimant's medical evidence must be sufficient to satisfy not only the Trustees, but also the Social Security Administrative Law Judge ("ALJ"), that the necessary causal link between injury and disability exists. Article II.D and this Court's precedent indicate that the SSDI findings are critical in determining Linville's eligibility.
 
 
 16
 Article II.D clearly states that the claimant's SSDI award must be based on disability that was found to have occurred "by reason of such [mine] accident." In this case, the SSDI award stated that Linville's disability was caused by "laminectomy and total excision of an ependymoma of conus medullaris" and resulting neurogenic bladder. No reference is made to the work injury, a lumbosacral strain. Linville claimed in his application that he became disabled from his back injury on March 12, 1986, but the decision of the ALJ granting disability benefits was based solely on a consideration of Linville's symptoms and condition subsequent to the surgery for removal of the tumor. The ALJ's decision makes no connection between these symptoms and the work injury. Thus, Linville fails to meet the eligibility requirement of Article II.D.
 
 
 17
 Moreover, this Court has made it clear that the date of disability as determined by the Social Security ALJ is a factor of great weight in determining causation in pension fund cases like this one, in which there is more than one possible cause for the disability. See Horn v. Mullins, supra, 650 F.2d at 37 (critical factor was date of disability determined by ALJ; here, two days after mine accident); Richards v. UMWA Health & Retirement Fund, supra, 895 F.2d at 138 (in dispute over whether date of disability was January 30 or 31, SSDI finding of January 30 tipped balance in favor of claimant). See also Boyd, supra, 873 F.2d at 58; Robertson, supra, 848 F.2d at 474 (Trustees' denial of benefits reversed in both cases, where ALJ found date of disability was same as date of claimant's injury).
 
 
 18
 All of the cases cited above involve SSDI findings that the date of disability was a matter of at most a day or two after the date of injury. Such a finding indicates that the Social Security ALJ found a clear causal connection between the injury and the disability. In this case, the SSDI date of disability is March 12, 1986, almost six years after Linville's mine injury. Moreover, as noted, the ALJ made no reference to the mine injury; the cause of disability for SSDI purposes was the tumor surgery and its effects. There is no precedent in this Circuit for finding causation where the time span between work injury and SSDI date of disability is this attenuated.
 
 
 19
 Based on our determination that substantial evidence exists to support the Trustees' denial of pension benefits, the judgment below is
 
 
 20
 AFFIRMED.