**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CURTIS NORMAN,
Plaintiff-Appellee,

v.

MICHAEL H. HOLLAND; MARTY D.

No. 96-2693

HUDSON; ELLIOT A. SEGAL; JOSEPH J.
STAHL, II, as trustees of the United
Mine Workers of America 1974
Pension Plan and Trust,
Defendants-Appellants.

Appeal from the United States District Court
for the Southern District of West Virginia, at Huntington.
Joseph Robert Goodwin, District Judge.
(CA-95-440)

Argued: October 3, 1997

Decided: December 2, 1997

Before WIDENER and MOTZ, Circuit Judges, and MICHAEL,
Senior United States District Judge for the Western District of
Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED**: Matilda Ann Brodnax, Senior Associate Counsel, Office
of the General Counsel, UMWA HEALTH AND RETIREMENT

FUNDS, Washington, D.C., for Appellants. Robert B. Wilson, Charleston, West Virginia for Appellee. **ON BRIEF** : Glenda S. Finch, Deputy General Counsel, Office of the General Counsel, UMWA HEALTH AND RETIREMENT FUNDS, Washington, D.C., for Appellants.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This case arises out of a denial of pension plan benefits to a mine worker claiming to be totally disabled by a mine accident.

Background

Curtis Norman worked in the West Virginia coal mines as a shuttle car operator until he injured his back in a mining accident on August 12, 1982.[1] In 1983, the Social Security Administration (SSA) awarded Mr. Norman Social Security Disability Insurance ("Disability Insurance") benefits based on a primary diagnosis of subphrenic abscess,[2] which stemmed from gastric stapling surgery undergone by Mr. Norman in 1980. The SSA determined that the date of the onset of disability was August 14, 1982. The SSA terminated Mr. Norman's Disability Insurance benefits, effective October 31, 1987, when the subphrenic abscess improved. When Mr. Norman reapplied for benefits, the SSA granted a second period of disability commencing November 1, 1987. At this point, the SSA relied on medical evidence

_____

[1] Mr. Norman was also involved in a mining accident in 1980, but continued to work after that time.
[2] A subphrenic abscess is an abscess occurring beneath the diaphragm.
4 J.E. Scmidt, M.D., Attorneys' Dictionary of Medicine and Word Finder S-244 (1995).

2

indicating "scoliosis of the back with chronic back pain, bursitis, borderline intellectual functioning and atypical depressive disorder." Pvt. Ltr. Rul. 3 (October 15, 1990).

Mr. Norman then applied to the United Mine Workers of America ("United Mine Workers") 1974 Pension Plan ("Pension Plan") for a disability pension.[3] The appellants, Trustees of the United Mine Workers Pension Plan ("Trustees"), acknowledged that Mr. Norman was totally disabled because he received Disability Insurance benefits for two periods of disability (August 14, 1982 to October 31, 1987; November 1, 1987 forward), which periods the Trustees treated separately. By letter dated November 23, 1994, the Trustees granted Mr. Norman a disability pension for the period of November 1, 1987 forward, but denied him a pension for the period of August 14, 1982 to October 31, 1987. Letter from Kyu W. Lee, Assistant Director for Eligibility Services, United Mine Workers of America Health and Retirement Funds, to Curtis Norman (Nov. 23, 1994); Claim Decision, Claim No. 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 at 4 (November 8, 1994). The Trustees based the denial on the determination by the SSA that Mr. Norman's primary diagnosis in the first period was the subphrenic abscess which did not result from a mining accident. Id. Mr. Norman submitted to the Trustees additional evidence indicating that the disability was due to problems with his back and the subphrenic abscess. However, by letter dated June 2, 1995, the Trustees again denied Mr. Norman a pension for the period from 1982 to 1987, asserting that Mr. Norman had still failed to demonstrate that the disability resulted from a mining accident. Letter from Linda W. Fritz, Senior Manager, Eligibility Processing, United Mine Workers Health and Retirement Funds, to Curtis Norman (Jun. 2, 1995).

Mr. Norman filed suit on June 14, 1995 in the district court of the Southern district of West Virginia. The district court held that the denial of benefits was an abuse of discretion, granted summary judgment to Mr. Norman, and overturned the Trustee's decision to deny benefits for the period from 1982 to 1987. This appeal ensued.

---

**3** An award of Disability Insurance is a prerequisite for application to the United Mine Workers Pension Plan.

Standard of Review

This court reviews de novo the grant of summary judgment by the district court. Thus, this court reviews the decision of the Trustees under the same standard used by the district court. Traditionally, district courts reviewed pension plan eligibility decisions of trustees for support by substantial evidence and to determine that the decisions were not arbitrary and capricious. LeFebre v. Westinghouse Elec. Corp., 747 F.2d 197, 204 (4th Cir. 1984). The United States Supreme Court has held, however, that review of plan trustees' decisions should be de novo unless the benefit plan grants the plan administrators or fiduciaries discretionary authority to determine eligibility for benefits. Firestone Tire & Rubber v. Bruch, 489 U.S. 101, 113 (1989). If plan administrators have such discretion, then a denial of benefits is reviewed for abuse of discretion only. Boyd v. Trustees of the UMWA Health & Retirement Funds, 873 F.2d 57, 59 (4th Cir. 1989). The Fourth Circuit has held that the 1974 United Mine Workers Pension Plan confers "full and final" authority on the Trustees to determine eligibility for benefits. Lockhart v. UMWA 1974 Pension Trust, 5 F.3d 74, 77 (4th Cir. 1993); Boyd, supra, 895 F.2d at 59. See also Hale v. United Mine Workers Health and Retirement Funds, 23 F.3d 899, 901 (4th Cir. 1994). Thus, the decision of the Trustees is reviewed for abuse of discretion. Id.

While it remains unclear whether the Bruch abuse of discretion standard is synonymous with the pre-Bruch arbitrary and capricious standard used in the Fourth Circuit, a decision which was arbitrary and capricious under pre-Bruch standards would be an abuse of discretion under the Bruch test. Richards v. United Mine Workers of America Health and Retirement Fund, 895 F.2d 133, 135 (4th Cir. 1990), citing Boyd, supra, 873 F.2d at 60). Whether the Trustees abused their discretion turns on whether their decision was supported by substantial evidence in the record before them. LeFebre, 747 F.2d at 204 (4th Cir. 1984). The court thus now reviews the decision of the Trustees to deny Mr. Norman benefits for abuse of discretion.

Analysis

The case before the court arises under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461, under which

any award of benefits "is governed in the first instance by the language of the plan itself." Lockhart, supra , 5 F.3d at 78 (4th Cir. 1993). The 1974 Pension Plan provides, in pertinent part, that:

> Any Participant who (a) has less than 10 years of signatory service prior to retirement and (b) becomes totally disabled as a result of a mine accident ... shall, upon retirement ... be eligible for a pension while so disabled. A participant shall be considered totally disabled only if by reason of such accident such Participant is subsequently determined to be eligible for Social Security Disability Insurance Benefits under Title II of the Social Security Act or its successor.

United Mine Workers Pension plan, Article II, Part D. The Fourth Circuit has interpreted "as a result of a mine accident" to mean that the total disability must have been:

> proximately caused by the mine accident. That is, if the plaintiff was injured in a mine accident and that injury, whether in combination with a previous or subsequent condition, is substantially responsible for plaintiff's inability to perform his job and for whatever medical and vocational reasons he is unable to perform an alternative job, then his total disability results from a mine accident.

Boyd, supra, 873 F.2d at 59, quoting Robertson v. Conners, 848 F.2d 472, 475 (4th Cir. 1988), quoting Horn v. Mullins, 498 F.Supp. 1197, 1200 (W.D. Va. 1980). The Trustees in the instant case concede that Mr. Norman was totally disabled between 1982 and 1987. They assert, however, that, for the period between 1982 and 1987, Mr. Norman's disability did not result from a mine accident and that the district court erred in finding an abuse of discretion on their part.

For the following three reasons, we hold that the district court correctly determined that the Trustees abused their discretion in denying Mr. Norman a pension under the United Mine Workers 1974 Pension Plan. First, the substantial evidence in the record indicates that Mr. Norman's disability was proximately related to a mine accident and proximate causation is all the Fourth Circuit has required to qualify a miner for a disability pension under the 1974 Pension Plan. A miner

5

may qualify for a disability pension if his disability is the result of a mine injury "in combination with a previous or subsequent condition." Boyd, supra, 873 F.2d at 59, quoting Horn v. Mullins, 498 F.Supp. 1197, 1200 (W.D. Va. 1980).

The evidence in this case indicates that the mine accident acted in combination with Mr. Norman's other conditions to render him unable to work. Mr. Norman underwent stomach stapling surgery in April 1980; sustained an injury to his middle back in a shuttle car accident in the mines in September 1980; and received periodic medical treatment between 1980 and 1982 for recurrent dorsolumbar and lumbar fibrositis, a chronic subphrenic abscess, and fever; yet he always returned to work until the mine accident on August 12, 1982. The subphrenic abscess was diagnosed in December of 1981, yet the SSA determined August 14, 1982 as the date of the onset of disability. In the Notice of Disability Cessation, the SSA indicated a primary diagnosis of gastric stapling and subphrenic abscess, and a secondary diagnosis of lumbar spine strain, suggesting that both conditions contributed to Mr. Norman's disability. Notice, Claim Number 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 (Aug. 26, 1987).

Moreover, two doctors noted the difficulty of assessing Mr. Norman's condition because of the interaction between the gastric/subphrenic problems and the lumbar problems. Dr. Robert B. Mattill stated, on April 29, 1983, "It is extremely difficult if not impossible to evaluate [Mr. Norman's] low back condition at this time because of current active treatment for his abdominal condition and a drain in his left lower abdomen." Letter of Robert B. Mattill, M.D., to Linda Perry Bowman, Claims Management Division, Workers Compensation Fund, Medical Division. Similarly, Dr. Hernandez indicated in a conversation with Lisa Behr, a Disability Examiner for the Disability Determination Section of the West Virginia Division of Vocational Rehabilitation, that, "[i]t is difficult to assess Mr. Norman." (April 6, 1983). Mr. Norman suffered from numerous physical ailments. The evidence indicates that several physical and mental conditions factored into Mr. Norman's inability to work. Under Boyd, plaintiff's injury need only be, "whether in combination with a previous or subsequent condition, ... substantially responsible for plaintiff's inability to perform his job." It appears to this court that the weight of the evidence indicates that the mine accident, combined with prior

6

and subsequent ailments, prevented Mr. Norman from returning to work.

Second, the Trustees failed to consider all of the evidence before them. Instead, they incorrectly relied on the diagnosis of the SSA for social security disability benefits to make the their own decision as to the pension award. Chicarelli v. UMWA Health and Retirement Funds indicates that the SSA's finding of disability is only "a salient bit of evidence." 943 F.2d 457, 462 n.6 (4th Cir. 1991). The finding of causation lies with the Fund, not the SSA. Id. The district court properly noted, "[T]he Trustees misunderstand their responsibility here. They have limited their inquiry to determining whether the accident caused the specific disability noted by SSA in the SSA's determination of eligibility for SSDI benefits." Norman v. Holland, No. 3:95-0440 at 11 (September 25, 1996). The Trustees stated in their decision on Mr. Norman's claim: "Social Security disability benefits granted for the closed period August 14, 1982 through October 31, 1987 were based upon subphrenic abscess.... Based on this information, I am unable to establish the existence of a causal link between Mr. Norman's mining accident and his disability for the closed period August 14, 1982 through October 31, 1987." Claim Decision No. 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, supra, at 4. The Trustees' decision to deny benefits was an abuse of discretion because it limited its inquiry too narrowly.

Third, the award of a disability pension for the period after November 1, 1987 reveals the inconsistency of the Trustees denial of a disability pension for the 1982 to 1987 period. The Trustees granted the pension for the post-1987 period based on a finding by the Pension Plan's Disability Pension Analyst of a causal link between the 1982 accident and Mr. Norman's dorsolumbar fibrositis, scoliosis, and depression in 1987. Claim Decision, Claim No. 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 at 4, supra. In the same letter, the Trustees indicate that Dr. Hernandez treated Mr. Norman for dorsolumbar fibrositis; that Dr. Hernandez noted residual effects from prior back injury; that Dr. Andrews of the West Virginia Disability Determination Service noted that Mr. Norman's stress-linked depression "in combination with the physical sequela of his occupational injuries render him disabled;" and that Dr. Whelan, a psychiatrist, found that Mr. Norman's depression was "brought about and sustained by chronic pain, due to the combined effects of his injuries and medical conditions." Id. Thus, for the same

7

symptoms and problems, the Trustees make the strange finding that there was no causal link for the first five years after the accident but, in effect, that a link then developed in the sixth year. Such strained analysis falls into the heartland of caprice and, therefore, abuse of discretion.

Conclusion

For these reasons, the decision of the Trustees to deny Mr. Norman a pension under the United Mine Workers Pension Plan was an abuse of discretion which the district court properly overruled in its thorough opinion. The opinion below is, therefore,

AFFIRMED.

8