**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

HOWARD VERNATTER,
Plaintiff-Appellee,

v.

MICHAEL H. HOLLAND, Trustee;
DONALD PIERCE, JR., Trustee;

No. 97-2647

ELLIOT A. SEGAL, Trustee; JOSEPH J.
STAHL, II, Trustee; UNITED MINE
WORKERS OF AMERICA HEALTH AND
RETIREMENT FUNDS,
Defendants-Appellants.

Appeal from the United States District Court
for the Southern District of West Virginia, at Beckley.
Elizabeth V. Hallanan, Senior District Judge.
(CA-96-1824-5)

Argued: December 3, 1998

Decided: March 12, 1999

Before WILKINSON, Chief Judge, MOTZ, Circuit Judge,
and WILLIAMS, United States District Judge for the
District of Maryland, sitting by designation.

_____

Reversed and remanded with instructions by unpublished per curiam
opinion.

_____

**COUNSEL**

**ARGUED:** Matilda Ann Brodnax, Assistant General Counsel, Office
of the General Counsel, UMWA HEALTH AND RETIREMENT

FUNDS, Washington, D.C., for Appellants. S.F. Raymond Smith, RUNDLE & RUNDLE, L.C., Pineville, West Virginia, for Appellee. **ON BRIEF:** Glenda S. Finch, Deputy General Counsel, Carolyn J. O'Meara, Senior Associate Counsel, UMWA HEALTH AND RETIREMENT FUNDS, Washington, D.C., for Appellants.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

This case is an appeal from an October 22, 1997 decision by the Honorable Elizabeth Hallanan, United States District Court for the Southern District of West Virginia. The case arises under Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1168. Appellants are the Trustees ("Trustees") of the United Mine Workers of America ("UMWA") 1974 Pension Trust ("1974 Pension Trust" or "1974 Pension Plan"). Appellee, Howard Vernatter brought his action against the Trustees to recover benefits allegedly due to him pursuant to 29 U.S.C. §§ 1132(a)(1)(B), 1132(e)(1) and 1132(f). The district court granted summary judgment in favor of Vernatter, finding that the Trustees had abused their discretion in determining that Vernatter had not established his eligibility for the pension benefits. For the reasons set forth below, we reverse.

I

Before discussing the facts specific to this appeal, a brief discussion of the eligibility requirements of the 1974 Pension Trust might be helpful. The 1974 Pension Trust is one of many employee benefits trusts, collectively called the United Mine Workers of America Health and Retirement Funds. The eligibility requirements for disability benefits under this Trust are found in Article II. C. of the 1974 Pension Plan, which provides:

2

> A participant who (a) has at least 10 years of signatory service prior to retirement, and (b) becomes totally disabled as a result of a mine accident . . . shall, upon retirement (hereinafter "Disability Retirement"), be eligible for a pension while so disabled. A Participant shall be considered to be totally disabled only if by reason of such accident such Participant is subsequently determined to be eligible for Social Security Disability Insurance Benefits under Title II of the Social Security Act or its successor.

JA at 355. Therefore, in order to be eligible for the benefits a claimant must establish: (1) that he has sustained injuries from a mine accident; (2) that he is totally disabled, which is a determination made by the Social Security Administration ("SSA"); and (3) that the mine accident is substantially responsible for his total disability. See Boyd v. Trustees of the United Mine Workers of America Health and Retirement Funds, 873 F.2d 57, 59 (4th Cir. 1989).

There is not one established definition of what constitutes a mine accident. Instead, the Trustees apply the Plan's rules and regulations, which are presented in a question and answer format ("Q & A"), to make that determination. Q & A 252 provides the three characteristics that must be present for the Trustees to find that a miner has been "disabled as the result of a mine accident." JA at 394. It states that:

> The following three characteristics must be present: (1) Unexpectedness: The disability must have been unlooked for and unforeseen; (2) Definiteness: The disability must be traceable to a definite time, place, and occasion which occurred within the course of the mine worker's employment. A progressive disease does not meet this test and therefore cannot be a disability that resulted from a mine accident; (3) Force and impact: The disability must have been caused by the exertion or impact of some external physical force or object against the body or by the exertion or impact of the body against some external physical object; i.e., not simply as a result of the mine worker's own physical condition.

3

Id. Q & A 252 also provides a list of examples of mine accidents. It is important for the purposes of this appeal to note that rock falls are not specifically enumerated as mine accidents.

II

Howard Vernatter, is a member of the United Mine Workers of America. Vernatter is also a participant in the 1974 Pension Plan. Vernatter has claimed that he is entitled to disability benefits because he is totality disabled. Initially, Vernatter claimed that his disability stemmed from back and shoulder injuries sustained in two accidents that occurred in 1980, while he was performing classified work for a signatory employer. Later, Vernatter claimed that his disability, which is mostly psychological in nature, stemmed from a facial injury that he received in a rock fall in June of 1984.

Vernatter was determined to be totally disabled by Administrative Law Judge ("ALJ") Virginia Mae Brown, of the SSA, in February of 1986. Judge Brown made reference to the alleged mine accident in 1984. She noted that "[d]uring an evaluation conducted [in September 1984] by D. Soulis, a psychiatrist . . ., the claimant said he had been extremely anxious since being covered up by a rock slide the previous June." JA at 181. Although Judge Brown found that Vernatter's back and shoulder injuries were not debilitating, she found that he was suffering from "severe post-traumatic stress disorder, anxiety, and depression, the forgoing greatly compromising his ability to function." JA at 182-83.[1] She stated that the

> anxiety and post traumatic stress related difficulties in connection with a June 1984 cave in in which [Vernatter] was nearly buried alive have greatly impaired his ability to acceptably interact with co-workers, supervisors, the public, or deal with even minimal stress encountered in a variety of routine, unskilled, entry level occupations.

_____

[1] Vernatter received Social Security disability benefits based on his psychological problems as well as his chronic obstructive pulmonary disease and arthritis in his lower back. See JA at 19.

4

JA at 181.

In January 1988, Vernatter sought disability benefits based on the 1980 accidents. In June of 1989, the Trustees determined that Vernatter was not totally disabled as a result of these accidents. The Trustees acknowledged that Vernatter suffered from medical and psychological problems, but found that these ailments were not the result of a mine accident.

Afterward, Vernatter provided the Trustees with additional medical records, and witness statements about the June 1984 incident. This information included medical records from several doctors, see JA at 22-25, 31-36, 152-53, 240-43, and 244-45, and corroborating statements from three co-workers who claimed to have witnessed the accident. See JA at 52-54. Vernatter had not filed a claim for West Virginia Workers' Compensation benefits. Nor did he submit any contemporaneous medical reports to establish that the injury occurred. Vernatter maintained that he did not file an accident report because his employer had informed him that there were not any forms available at the time of the incident. See JA at 51, 59. The Trustees reconsidered Vernatter's application, but determined that there was not enough evidence to show that his disability was caused by a mine accident as defined by Q & A 252.

Vernatter filed suit against the Trustees, claiming that they had wrongfully denied his application for disability pension benefits based on the 1984 incident, not the 1980 accidents. On August 6, 1996, the Honorable David Faber, United States District Court of West Virginia, remanded the case to the Trustees so that they could review new evidence produced by Vernatter. This evidence included an audiogram which indicated that Vernatter had normal hearing, JA at 23, progress notes, dated April 25, 1995, which indicated that Vernatter had an obstruction in his nose, JA at 24, and a February 7, 1986 evaluation, which referenced a nasal obstruction. JA at 25. The Trustees, by a letter dated September 23, 1996, stated that they had reviewed this evidence but found that it failed to establish that Vernatter's disability was the result of a mining accident. The letter stated that "[n]one of this information relates to injury received in a mining accident, and none relates to the impairments determined to be disabling by the Administrative Law Judge." JA at 19.

5

Thereafter, Vernatter again filed suit. After the parties filed cross motions for summary judgment, the district court granted Vernatter's motion, specifically finding that Richards v. United Mine Workers of America, et al., 895 F.2d 133 (4th Cir. 1990), which also dealt with the 1974 Pension Plan, was controlling. In that case, this Court held that findings of the SSA "[are] entitled to great weight." Id. at 138. As Judge Brown had referenced the 1984 accident in making her disability decision, the district court concluded that the ALJ had found that this accident was the cause of the disability. The district court stated that a "careful review of the ALJ's decision reveals that the ALJ accepted as fact the occurrence of Plaintiff's alleged mining accident of June 1984. Further, the ALJ held that it was the June 1984 mining accident which, to the near exclusion of all other factors, brought about Plaintiff's permanent disability. . . ." JA at 412. Moreover, the district court stated:

> The ALJ's determination is conclusive evidence of disability for purposes of the pension plan. Boyd v. Trustees of the UMWA Health & Retirement Funds, 873 F.2d [57], 59 [(4th Cir. 1989)]. . . . It seems only rational to maintain that, if the ALJ's determinations as to disability are conclusive, then the reasons relied on for the finding of disability should be treated as conclusive as well. . . . Therein is the significance for the weight given by the Fourth Circuit to the ALJ's determination of disability onset.

JA at 404.

The district court found that the Trustees had abused their discretion by relying "solely upon the fact that there was neither an accident report nor any contemporaneous medical records detailing the alleged mining accident." JA at 414. The court stated that under Richards "such deficiencies do not automatically trump all other evidence and effectively terminate the requisite inquiry." Id. The district court found that the Trustees' "decision further failed to examine any of the evidence supporting the existence and disabling nature of the alleged mining accident of June 1984, or offer any evidence which Defen-

6

dants may have relied upon to refute the same." JA at 413. The district court, therefore, granted summary judgment in favor of Vernatter.[2]

III

The Trustees argue that the district court erred by granting summary judgment in favor of Vernatter, thus reversing the Trustees' decision to deny Vernatter's application for disability benefits. They maintain that they had substantial evidence to support their determination that no accident had occurred in June 1984, and therefore did not abuse their discretion by denying the application. We agree.[3]

_____

[2] The parties subsequently requested an order remanding the case so that the Trustees could address the issue of causation. The district court found that such an action would be contrary to her reasoning in its October 22, 1997 opinion. The court stated that:

> The Court finds the determination suggested by the "Modified Order" to be illogical. If it is to be accepted that the alleged mining-accident actually occurred, and let it be remembered that a denial of the mining-accident's occurrence was the cornerstone of Defendant's argument, the Court does not see how it can turn its back on the ALJ's finding of causation. As the ALJ found Plaintiff disabled for psychological reasons alone, and pointed to the disputed mining-accident as the major cause of Plaintiff's psychological problems, the Court finds it virtually impossible, if the fact of the mining-accident is to be accepted, to legitimately determine that the issue of causation remains in doubt.

JA at 408. Therefore, on April 28, 1998, The district court issued a Modified Memorandum Opinion and Order, which reiterated its original findings.

[3] The Trustees also argue that even if the district court did not err in finding that there was an accident, the district court should have remanded the case back to them so that they could determine whether there was a causal link between the accident and Vernatter's current disability. They argue that under the terms of the Plan, this determination is within their purview, and thus the district court erred by holding that they were bound to follow the findings of Judge Brown in terms of causation. Because we find that the Trustee's decision to deny pension benefits was supported by substantial evidence, we do not need to address this argument.

7

We review the district court's grant of summary judgment under the de novo standard. Brogan v. Holland et al. , 105 F.3d 158, 161 (4th Cir. 1997). Under ERISA, if the pension plan gives the trustees of the plan discretionary powers to determine eligibility, a reviewing court must examine the trustees' decision concerning eligibility under the abuse of discretion standard. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989). This Court has previously held that the 1974 Pension Plan affords its Trustees the discretion to determine eligibility. See Boyd, 873 F.2d at 59; Lockhart v. United Mine Workers of America 1974 Pension Trust, 5 F.3d 74 (4th Cir. 1993). Therefore, the abuse of discretion standard will apply in this case.

In Richards, this Court held that the abuse of discretion standard was synonymous with the arbitrary and capricious standard once used by this Court. See Richards, 895 F.2d at 135. Under this standard of review, the Trustees' decisions "will not be disturbed if they are reasonable." Bernstein v. CapitalCare, Inc., 70 F.3d 783, 787 (4th Cir. 1995). Further, the Trustee's decision will not be disturbed if it "is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." Id. at 788 (internal quotations omitted). Moreover, if the record includes conflicting credible evidence, the Court "cannot substitute [its] judgment for that of the [Trustees]. [The court's] review is at an end when [it] conclude[s] ... there is substantial evidence to support the [Trustees' decision]. . . ." Hamrick v. Schweiker, 679 F.2d 1078, 1082 (4th Cir. 1982).

In the present case, there is substantial evidence to support the Trustees' conclusion that Vernatter had not established that a mine accident within the meaning of Q & A 252 had occurred. The record contains several reports from doctors that vary in detail as to the severity of, and even the date of, the alleged accident. The earliest report that includes a reference to the June 1984 event is that of Dr. Demosthenes Soulis. Dr. Soulis stated that on September 5, 1984, Vernatter told him that "on June 8, 1984 he was covered up by rock and sustained some cuts and bruises on his face and around his eyes." JA at 317.

Arthur Ballas, a vocational consultant and psychologist, reported on March 28, 1985 that Vernatter had suffered a"head injury" on June 7, 1984. JA at 257. Ballas also reported that Vernatter told him

8

that he had stopped working because "a piece of rock fell on me and scared me out [of the mines]." Id.

On April 7, 1985, Paul Crawford, another psychologist reported that Vernatter informed him that he had injured his nose on June 7, 1984, when it "was struck by a rock which fell from the ceiling of a mine." JA at 256. This date and depiction of the event was also reported by Dr. Kwan Ho Lee on May 31, 1985. See JA at 244.

On June 5, 1985, Dr. R.A. Crawford, Jr. reported that Vernatter had told him that "[o]n June 7, 1984 a rock fell from the mine top striking him on the nose." JA at 240. Dr. Crawford also indicated that Vernatter had not sought "medical treatment for this injury except that he stopped work about July 1, 1984 due to nervousness and fear of returning to work in underground coal mining." Id.

Vernatter told William Brezinski, a psychologist, on July 20, 1985, that he was "struck by a piece of falling rock which hit him on the forehead and lacerated his nose." JA at 242. Brezinski's report also indicates that Vernatter informed him that after the incident, Vernatter "was dazed for a few moments and stayed "shook up" for a long time after that." Id.

In October 23, 1987, Vernatter told Dr. Nasreen Dar, a psychiatrist, about the rock fall and claimed that his nose was broken by it. See JA at 152. Finally, on July 13, 1995, Vernatter was examined by Dr. Mohammed Ranavaya, a consultant in Occupational and Environmental Medicine. In a July 14, 1995 letter, Dr. Ranavaya stated:

> Mr. Vernatter reports that ever since that rock fall on his face in June 1984 in the mines his `nerves' are shot and he has developed nervousness/fear to return to work after the injury to his face. He states that he tried to return to work but he was so tense and scared that he could hardly do his job. He also states that he felt that he was going to die during the rock fall and the thought of going back to the mines gives him a chill down his spine.

JA at 32. Moreover, Dr. Ranavaya reported that Vernatter told him that his face had been injured "on June 11, 1984 when he was covered

9

by a rock fall. According to him, he had black eyes and a broken nose from this injury, but apparently he never went to the doctor for this." JA at 33. Dr. Ranavaya found "evidence of facial injury in the past which has resulted in the deformity of his nose and[a] deviated nasal septum." JA at 35. He also found that Vernatter was suffering from post-traumatic stress disorder. In making these determinations, however, Dr. Ranavaya relied solely on Vernatter's statements about the alleged event as the cause of these injuries.

In fact all of the doctors, as well as ALJ Brown, who found that Vernatter's post-traumatic stress disorder, anxiety and depression were causally linked to the alleged June 1984 incident based their opinions on information provided by Vernatter alone. However, as has been shown, Vernatter provided three different dates for the accident: June 7, 8, and 11. As Q & A 252 requires a mine accident be traceable to a "definite time, place, and occasion which occurred within the course of the mine worker's employment," the Trustees could reasonably find that the reports offered by Vernatter did not establish that a mine accident had occurred. The reports also varied in the severity of the event. Some indicated that a rock had simply struck Vernatter's nose, others that his nose had been lacerated, and still others that he had been given black eyes and a broken nose. Given these contradictions, this Court believes that the Trustees reasonably concluded that the reports lacked reliability. On the other hand, the district court opined that these inconsistencies were minimal and "rather insignificant." JA at 415. The district court, in attempting to resolve the conflicting but credible evidence as presented by this record, in effect substituted its judgment for that of the Trustees. This is, of course, precluded under the abuse of discretion standard of review. See Hamrick, 679 F.2d at 1082.

Moreover, the record also includes reports which do not reference the alleged accident. For example, there is no mention of the incident in either Dr. V.D. Modi's December 18, 1984 report or his September 29, 1987 report. See JA at 164-67, 321-24. Moreover, in his January 28, 1985 letter to the State of West Virginia Disability Determination Section, Dr. I.A.K. Rana commented on Vernatter's depression due to the death of his son. He, however, did not make any mention of the alleged June 1984 accident. See JA at 272. Finally, there is a report from Constantine G. Demopoulos, a vocational consultant and clinical

10

psychologist, dated September 17, 1984, which not only does not mention the June 1984 incident, but also states that"[n]o facial disfigurement was indicated." JA at 320. Therefore, according to Demopoulos, a mere three months after the alleged accident, Vernatter did not have any visible signs of such an event.

The Trustees also note that not only did Vernatter not seek medical treatment immediately after the incident, he worked overtime for weeks afterward. See JA at 118. Moreover, the Trustees note that Vernatter never reported the incident to the Workers' Compensation Fund, although he spent three years (1984-1987) trying to get benefits from it. See JA at 140, 142-47.

The only independent evidence submitted by Vernatter to support his claims were three statements by former co-workers. These three identical statements were are all signed on February 23, 1995. Each assert that the co-worker "witnessed the mine accident on June 11, 1984 in which Howard Vernatter was involved." JA at 52-54. These statements are very general in nature. They do not indicate whether Vernatter was actually struck by a rock or merely present when a rock fall occurred. In fact, they do not indicate what type of "mine accident" occurred. The district court stated that"[t]he [witness] statements strike the court as evidence that something happened on that day." JA at 417 (emphasis in original). While conceivably this may be true, the 1974 Pension Plan requires more than just evidence that something happened. Q & A 252 requires evidence of unexpectedness, definiteness, and force or impact upon the body.

The district court relied heavily on Richards and Boyd, and held that Judge Brown's findings were to be given great weight. Further, in its Order denying the parties Joint Motion Requesting Remand, the district court stated that "when the ALJ makes specific findings, absent legal error, they are not to be ignored by the party to whom they are detrimental or inconvenient." JA at 409. We believe that the reliance on Richards was misplaced.

In Richards, the plaintiff, Homer Richards had chest pains while he was lifting heavy timbers at work, on January 30, 1981. 895 F.2d at 134. No accident report was filed, and there was not any independent verification by the eyewitnesses to the event. The next day, January

11

31, 1981, while attending a wrestling match, Richards suffered severe chest pains which were later diagnosed as symptoms of a heart attack. The issue in the case was when Richards had suffered the heart attack, at work, or at the match. Further, there was conflicting testimony by two physicians. One found that the heart attack was caused by the heavy lifting at work and the other did not. Id . at 135.

This Court found that "[a] reading of the Trustees' regulations establishes that, once Richards shows that he suffered a heart attack while lifting heavy objects in the mine, he qualifies for benefits if the heart attack in turn caused his disability." Id. at 137. There was no question that the heart attack had caused the disability, only whether it had occurred at work. Because an at-work heart attack is specifically enumerated in Q & A 252, this Court found that it "preclude[d] further inquiry into whether the heavy lifting was merely coincidental to or instead actually caused the heart attack." Id.

In making the determination whether Richard's heart attack occurred at work, this Court noted that there was conflicting evidence. This Court held, however, that the SSA determination of the disability onset date as January 30, 1981 tipped the scale in favor of finding that the heart attack occurred on that date. This Court stated:

> Both the Social Security Administration and the Ohio Bureau of Workers' Compensation predicated their awards of benefits to Richards on a disability onset date of January 30, 1981. . . . The social security finding as to the date of onset probably does not by itself decide the matter. Nonetheless, it appears that the social security determination that Richards' disability began on January 30, 1981 is entitled to great weight, reducing in the present case, the contrary evidence to insignificance.

Id. at 138.

The present case is distinguishable from Richards. In Richards, the Trustees did not have to apply Q & A 252's three characteristics test because a heart attack was specifically enumerated as a mine accident. In the instant case, however, Q & A 252 does not specifically mention injuries stemming from rock falls. Nor does it specifically

12

state that any psychological disability that occurs after an injury due to a rock fall is necessarily caused by that incident. Therefore, Vernatter was required to establish that a mine accident, having the characteristics of unexpectedness, definiteness, and force or impact upon the body, had occurred.

Further, in Richards, unlike here, there was no question about causation. The real issue in Richards was the disability onset date. The plain language of the 1974 Pension Plan delegates the authority to determine whether the applicant is disabled to the SSA. "[A] Social Security disability award conclusively establishes the medical disability of the pension applicant." Robertson v. Connors, 842 F.2d 472, 475 (4th Cir. 1988). The disability award, however, does not conclusively establish that the disability was the "result of a mine accident." See Hale v. Trustees of the United Mine Workers Health & Retirement Funds, 23 F.3d 899, 902 (4th Cir. 1994).

An ALJ, in making the determination about disability or the disability onset date, does not have to consider whether the disability was caused by a mine accident as defined by Q & A 252. Instead, the ALJ uses a five-step test, which focuses on the medical status of the claimant. See Sullivan v. Zebley, 493 U.S. 521 (1990). Although, in this case, Judge Brown's findings did indicate that Vernatter's disability stemmed from the alleged June 1984 incident, she did not have to apply the 1974 Pension Plan's definition of mine accident in making the disability determination. Therefore, her findings that an accident occurred, unlike her findings as to disability and disability onset date, are not entitled to great weight.

Moreover, Article VIII. A of the 1974 Pension Plan states that "[t]he Trustees or such other named fiduciaries as may be properly designated shall have full and final determination as to all issues concerning eligibility for benefits." JA at 376. Therefore, the findings as to whether a mine accident has occurred within the meaning of the 1974 Pension Plan, and the determination as to causation are for the Trustees, and not the SSA to make. See Hale, 23 F.3d at 902.

The Trustees had substantial evidence to reasonably conclude that Vernatter had not submitted "credible information showing an injury in the mines on a given date that involved force or impact against his

13

body as required by Q & A 252: "(1) the absence of an accident report, (2) the lack of Worker's Compensation records, (3) the absence of contemporaneous medical reports, (4) the inconsistencies found in the existing medical reports, and (5) the fact that the only independent sources of evidence supporting Vernatter's claim were three brief unspecific statements by his coworkers. Appellants' Reply Brief at 3. <u>See Brogan</u>, 105 F.3d at 163. Accordingly, we reverse and remand this case to the district court with instructions to enter summary judgment in favor of the Trustees.

<u>REVERSED AND REMANDED</u>

14